Mark HARLESS, Plaintiff,

v.

RESEARCH INSTITUTE OF AMERICA
and Thomson Holdings, Inc.,
Defendants.

No. 96 Civ. 8866 (PKL).

United States District Court,
S.D. New York.

March 26, 1998.

Fast & Tenenbaum, P.A. (Mark J. Stratton, of counsel), New York City, for Plaintiff.

Satterlee Stephens Burke & Burke LLP (Daniel G. Gurfein, John L. Slafsky, of counsel), New York City, for Defendants.

### OPINION & ORDER

LEISURE, District Judge.

Plaintiff Mark Harless brings this action against defendants Thomson Holdings, Inc. ("Thomson"), and Research Institute of America ("RIA"), alleging untimely disclosure of documents requested pursuant to the Employment Retirement Income Security Act of 1974 ("ERISA"), miscalculation of his Long–Term Disability ("LTD") benefits in violation of ERISA, and miscalculation of his Short–Term Disability ("STD") benefits in violation of state contract law. Pursuant to Rule 12 of the Federal Rules of Civil Procedure, defendants move to dismiss plaintiff's first and second claims for failure to state a claim upon which relief can be granted. Defendants also move for summary judgment on plaintiff's second and third claims pursuant to Fed.R.Civ.P. 56. Plaintiff has cross-moved to amend his Complaint pursuant to Fed.R.Civ.P. 15. For the reasons stated herein, the Court grants defendants' motion to dismiss and/or for summary judgment and denies plaintiff's cross-motion to amend.

### BACKGROUND

Harless was employed from 1986 until 1992 by RIA, a division of Thomson, as a commissioned account representative. *See* Complaint at ¶ 12. He worked out of his home in California. *See* Affidavit of James A. Loring ("Loring Aff.") at ¶ 4. Thomson's headquarters are located in Stamford, Connecticut. *See* Defendants' Statement of Undisputed Fact ("Def.'s 3(g)") at ¶ 3. RIA's headquarters are located in New York City. *See* Loring Aff. at ¶ 5. In early 1991, Harless was involved in a work-related automobile accident and suffered significant back and nerve damage. *See* Affidavit of Mark Harless ("Harless Aff.") at ¶¶ 3–4. These injuries led to Harless's seeking STD and LTD benefits. *See id.* at ¶¶ 3–6.

Plaintiff's claims are related to the following six Thomson employee benefit plans in which he participated:

1. The LTD Plan;
2. The PruCare Health Insurance Plan;
3. The Vision Service Plan;
4. Thomson's 401(k) Plan;
5. The Defined Benefit Plan; and
6. The STD Plan.

*See* Loring Aff. at ¶ 1. The first five of these plans are governed by ERISA; they were administered from Thomson's Connecticut headquarters, with Thomson naming Basil A. Marraffa as Designated Administrator of the first three plans, the Administrative Committee as Designated Administrator of the 401(k) Plan, and the Plan Administrator as Designated Administrator of the Defined Benefit Plan. *See id.* at ¶ 7. Marraffa and Loring were charged with fulfilling the administrative obligations of the Administrative Committee and Plan Administrator. *See id.*

Plaintiff alleges that he made numerous requests for plan documents between 1992 and 1994. Specifically, he asserts that his quest for documents began on January 9, 1992, when he called James Robinson, RIA's Benefits Administrator, seeking copies of the plans in which he was enrolled. *See* Complaint at ¶ 18. After a month had passed, plaintiff renewed his request in writing, and asked for additional documents. *See* Harless Fax dated 2/11/92, annexed as Exhibit C to Loring Aff. Plaintiff followed up a week later with a written request to Joseph Kelly, RIA's Vice President of Human Resources. *See* Harless Aff. at ¶ 21. Then, on March 2, 1992, plaintiff made another document request to Robinson via fax and registered mail. *See* Harless Letter, annexed as Exhibit D to Loring Aff. Three days later, plaintiff again wrote to Kelly. *See* Harless Letter dated 3/5/92, annexed as Exhibit E to Loring Aff. On March 13, 1992, Robinson sent a PruCare Health Plan, a Dental Plan, and an outline of the STD Plan to Harless via overnight mail, and stated that Robinson had forwarded the request for further information to "the parent office" in Stamford where the information was located. Robinson Letter, annexed as Exhibit 17 to Harless Aff.

Plaintiff continued to press his request for documents, writing Robinson on April 2, April 27, and August 27, 1992. *See* Harless

Letters, annexed as Exhibit F to Loring Aff., Exhibit 2 to Harless Aff., and Exhibit I to Loring Aff., respectively. On May 22, 1992, plaintiff again wrote to Kelly seeking the desired information. *See* Harless Letter, annexed as Exhibit G to Loring Aff. Plaintiff next wrote to Richard Harrington, President of Thomson, on June 17, 1992. *See* Harless Letter, annexed as Exhibit H to Loring Aff. Plaintiff eventually retained an attorney, Amiram Givon, Esq., who wrote to Diane Gasser, Robinson's replacement as RIA Benefits Administrator, demanding plan documents. *See* Givon Letter dated 12/14/93, annexed as Exhibit J to Loring Aff. Gasser forwarded some, but not all, of the requested documents. *See* Plan Summaries, annexed as Exhibit 3 to Harless Aff.; *see also* Gasser Letter dated 1/4/94, annexed as Exhibit 4 to Harless Aff. Givon then renewed his request for certain other documents. *See* Givon Letter dated 2/2/94, annexed as Exhibit I to Loring Aff. Finally, on March 24, 1994, Givon wrote to the Thomson Plan Administrator seeking documents. *See* Givon Letter dated 3/24/94, annexed as Exhibit L to Loring Aff. On April 13, 1994, the requested documents were furnished to Givon.

Under the LTD Plan, Harless was entitled to monthly disability payments equaling 70% of his basic monthly earnings from the previous year. *See* LTD Plan at 2, annexed as Exhibit O to Loring Aff. Beginning July 13, 1992, Harless received LTD disability benefits in the amount of $3058.58 each month. *See* Affidavit of Mark D. Halton ("Halton Aff.") at ¶ 2. In a letter dated January 30, 1995, Givon complained that plaintiff was entitled to greater monthly benefits because his 1991 base salary had been miscalculated. *See* Givon Letter dated 1/30/95 at 6–10, annexed as Exhibit M to Loring Aff. Specifically, Givon complained that Harless's 401(k) contributions as well as certain bonuses erroneously had been excluded in determining his 1991 salary for purposes of establishing the level of benefits to which he was entitled. *See id.* Thomson responded by acknowledging that Harless's 401(k) deferrals should have been included in his 1991 base salary. *See* Letter of Richard S. Chargar dated March 22, 1995, annexed as Exhibit N to Loring Aff. However, Thomson denied that Harless's 1991 bonuses also should have been included in his base salary under the LTD Plan. *See id.* UNUM Life Insurance Company of America ("UNUM"), which issued the LTD Policy to Thomson and administered benefit payments to Harless, sent a check for $12,129.70 to Harless on September 1, 1995. *See* Halton Aff. at ¶ 5; *see also* UNUM Payment History Detail, annexed as Exhibit B to Halton Aff. This payment represented the acknowledged shortfall, plus interest, in Harless's prior LTD Plan benefits. *See* Halton Aff. at ¶ 5.

In September of 1995, Harless and UNUM reached an agreement pursuant to which Harless would receive three lump-sum payments of $50,000 in lieu of his monthly LTD benefits. *See* Def.'s 3(g) at ¶ 9; *see also* Halton Aff. at ¶ 6. In connection with this agreement, Harless signed a Settlement Release on October 5, 1995 (the "Release"), waiving any further claims relating to his LTD benefits. *See* Release, annexed as Exhibit C to Halton Aff. Specifically, Harless agreed to the following:

> Upon execution by me of this Settlement and Release, UNUM will pay me the sum of $150,000.00, in addition to benefits provided to date, if any, as full, final, and complete satisfaction and settlement of its past, present, and future liability to me under Policy Number 00351921.

> I understand that by signing this Settlement and Release, I am forever relinquishing any and all claims I have or may have against UNUM, including but not limited to, any claim for additional benefits for any disability from UNUM under Policy Number 00351921 and under any other UNUM group disability policy, under which I may become insured. This is a legally binding document and I understand and acknowledge that I have the right to have this Settlement and Release reviewed by an attorney and/or other personal, financial or medical advisor(s) prior to signing this Settlement and Release.

*Id.* at ¶¶ 2–3. Harless now claims that he executed the Release under duress. *See* Harless Aff. at ¶ 56. Pursuant to his settlement with UNUM, Harless received payments of $50,000 on December 4, 1995, Janu-

ary 2, 1996, and January 17, 1997. *See* Def.'s 3(g) at ¶ 12.

On November 22, 1996, plaintiff filed a Complaint in this Court, alleging violations of ERISA and state contract law. Jurisdiction over plaintiff's ERISA claims was established pursuant to 29 U.S.C. § 1132(a), and pendent jurisdiction over his contract claim was proper under 28 U.S.C. § 1367(a). Defendants now move for dismissal and/or summary judgment on plaintiff's claims. Plaintiff cross-moves to amend the Complaint to add additional defendants as well as a claim for duress.

## DISCUSSION

### I. Plaintiff's § 1132(c) Claim

#### A. *The Applicable Standard*

In deciding a defendant's Rule 12(b)(6) motion to dismiss, a court must accept as true the allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See Kaluczky v. City of White Plains,* 57 F.3d 202, 206 (2d Cir.1995). A court cannot grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The key issue in deciding a Rule 12(b)(6) motion "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996) (internal citations omitted).

#### B. *Improper Defendants*

■ Plaintiff's first cause of action arises under 29 U.S.C. § 1132(c), which provides:

Any administrator ... who fails or refuses to comply with a request for any information which such administrator is required by this title to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c). While plaintiff has named his employers as defendants in this case, liability under § 1132(c) clearly is limited to plan "administrators". Under ERISA, an administrator is defined as "the person specifically so designated by the terms under which the plan is operated." 29 U.S.C. § 1002(16)(A)(i). The Court of Appeals for the Second Circuit has instructed that a party not designated as an administrator cannot be held liable for failing to furnish a plan description. *See Lee v. Burkhart,* 991 F.2d 1004, 1010 n. 5 (2d Cir.1993) (citing *McKinsey v. Sentry Insurance,* 986 F.2d 401 (10th Cir.1993) (holding that only a plan administrator can be liable under § 1132(c))). As defendants did not serve as plan administrators, plaintiff's § 1132(c) claim must be dismissed for failure to state a claim upon which relief can be granted.[1]

#### C. *Timeliness*

■ As ERISA does not provide a limitations period for claims brought under § 1132(c), the Court must identify and apply the state statute of limitations most analogous to the federal claim. *See Miles v. New York State Teamsters Conference,* 698 F.2d 593 (2d Cir.1983). The Court first must decide which state's statutes of limitations to consider. In the instant case, the parties agree that Connecticut is the most appropriate choice; several of the plans' choice-of-forum clauses designate Connecticut, many of the plans were administered in Connecticut, the plan administrators were located there, and Thomson is located in Connecticut. Accordingly, the Court looks to Connecticut state law for the relevant limitations period.

■ The determination of the most appropriate limitations period requires an ex-

---

1. Plaintiff has cross-moved to amend his Complaint to add the plan administrators as defendants. The Court examines the motion to amend, *infra,* at Section IV.

amination of the nature of the federal claim and the federal policies involved. *See Damon v. Unisys Corp.*, 841 F.Supp. 1094, 1097 (D.Colo.1994). The Court recognizes that the question of which Connecticut statute of limitations to apply to a claim under § 1132(c) is one of first impression. There are two relevant choices from which the Court must select; defendants argue that the Court should apply Connecticut's one-year statute for actions for civil statutory penalties (G.S.A. § 52–585), while plaintiff contends that the Court should apply Connecticut's six-year statute for actions based on a contract or implied contract (G.S.A. § 52–576).[2] While both positions have some merit, the Court finds that the instant action is more analogous to an action for civil statutory penalties than one for breach of contract. Therefore, the Court applies the one-year statute of limitations provided in G.S.A. § 52–585.

In deciding to apply § 52–585, the Court takes note of the decision in *Leonelli v. Pennwalt Corp.*, 1988 WL 108594 (N.D.N.Y.), *aff'd in relevant part, rev'd in part* 887 F.2d 1195 (2d Cir.1989), in which the district court denied a plaintiff leave to amend his complaint to add a § 1132(c) claim on the ground that such a claim would be time-barred. In so ruling, the district court stated, "[Section] 1132(c) liability is a creature of statute as opposed to liability based on contract or tort. . . ." *Leonelli*, 1988 WL 108594 at *5. The Second Circuit affirmed this rejection of a contractual theory of liability under § 1132(c).[3]

The Court also finds persuasive the decision of the district court in *Damon*. Rejecting *Abbott v. Drs. Ridgik, Steinberg & Assoc., P.A.*, 609 F.Supp. 1216 (D.N.J.1985), which had applied the New Jersey statute of limitations governing contract claims to a claim under § 1132(c), the *Damon* court concluded that as a claimant under § 1132(c)

need not show prejudice to be awarded up to $100 a day, the amount awarded represented a penalty. *See Damon*, 841 F.Supp. at 1097. This reasoning echoes the decision of the Third Circuit in *Groves v. Modified Retirement Plan, Etc.*, 803 F.2d 109 (3d Cir.1986), which found, "Though it is a very close question, we believe that § [1132] (c)'s imposition of personal liability on plan administrators is a penal provision." *Groves*, 803 F.2d at 117. In explaining its view that any amount awarded under § 1132(c) is penal rather than remedial, the *Groves* court explained:

> [T]he threat of personal liability was imposed primarily because of the effect it would have on a plan administrator-inducing him to comply with the statute-and only secondarily, if at all, out of a desire to make participants whole for the "damages" they incurred as a result of the plan administrator's failure to fulfill the obligations ERISA imposes upon him.

*Id.*

Relying on *Leonelli*, *Damon*, and *Groves*, the Court finds that plaintiff's claim under § 1132(c) is more analogous to an action for civil statutory penalties than one for breach of contract. Accordingly, the Court applies the one-year statute of limitations set forth in Connecticut's G.S.A. § 52–585. Plaintiff filed his Complaint on November 22, 1996. The most recent request for information enumerated in the Complaint was made on March 24, 1994. *See* Complaint at ¶ 30. Therefore, as more than one year had lapsed between the last request for information and the filing of the Complaint, the applicable statute of limitations had run. The untimeliness of plaintiff's claim under § 1132(c) serves as an alternate basis for the Court's granting defendants' motion to dismiss the claim.

## II. Plaintiff's Claim for LTD Benefits

Plaintiff's second claim is for recovery of LTD benefits to which he claims he is enti-

---

2. The Court notes that Connecticut does not have a general statute of limitations (such as New York's CPLR § 214(2)) for actions to recover upon a liability, penalty, or forfeiture created by statute. Other federal courts applying the law of states with such statutes have selected them as the most appropriate statute of limitations to apply to an action pursuant to § 1132(c). *See, e.g., Stone v. Travelers Corp.*, 58 F.3d 434 (9th Cir.1995); *Middleton v. Russell Group, Ltd.*, 924 F.Supp. 48 (M.D.N.C.1996).

3. In *Leonelli*, the district court applied New York's three-year statute of limitations for general statutory liability, CPLR § 214(2). As noted, *supra*, at note 2, Connecticut does not have an equivalent statute of limitations.

tled as a result of defendants' having miscalculated his 1991 base salary. Defendants have moved to dismiss this claim as well, or in the alternative for summary judgment on the claim. The Court grants the motion.

### A. The Standard for Summary Judgment

The moving party is entitled to summary judgment only if the Court determines that there exists no genuine issue of material fact and that based on the undisputed facts, the moving party is entitled to a judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *see also Holt v. KMI–Continental, Inc.*, 95 F.3d 123, 128 (2d Cir.), *cert. denied,* — U.S. —, 117 S.Ct. 1819, 137 L.Ed.2d 1027 (1997); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir.1995) (citing *Celotex,* 477 U.S. at 322–23); *see also Scottish Air Int'l, Inc. v. British Caledonian Group, PLC,* 81 F.3d 1224, 1231 (2d Cir.1996). The Court's function on a motion for summary judgment is not to try issues of fact, but rather to determine whether there exists a genuine issue of material fact to be tried. *See Sutera v. Schering Corp.,* 73 F.3d 13, 15–16 (2d Cir.1995). In determining whether there exists a genuine issue of material fact, the Court must resolve all ambiguities and draw all justifiable inferences in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91

L.Ed.2d 202 (1986); *see also Holt,* 95 F.3d at 129.

### B. Improper Defendants

■ Plaintiff named his employers as the defendants in this action. As the Second Circuit explained in *Leonelli,* "In a recovery of benefits claim, only the plan and the administrators and trustees of the plan in their capacity as such may be held liable." *Leonelli,* 887 F.2d at 1199. Thus, employers are not proper defendants in a claim for recovery of benefits. The Court therefore must grant the motion to dismiss the second claim for failure to state a claim upon which relief may be granted, as the named defendants cannot be liable for failing to pay benefits.[4]

### C. The Release

■ Even if plaintiff could proceed against defendants with his second claim, it would be barred under the terms of the Release into which he entered on October 5, 1995. Pursuant to the terms of the Release, plaintiff relinquished any claim for additional benefits for any disability. *See* Release at ¶ 3. Therefore, the only issue for the Court to analyze before enforcing the Release is plaintiff's claim that he signed the Release under duress.[5]

■ The parties have not analyzed the choice of law issue presented by plaintiff's assertion that the Release is void due to economic duress. Plaintiff asserts his claim for additional LTD benefits under ERISA. Federal law decides whether the release of a federal statutory claim is valid. *See Olin Corp. v. Consolidated Aluminum Corp.,* 5 F.3d 10, 15 (2d Cir.1993); *see also Reid v. IBM Corp.,* 1997 WL 357969 at *3 (S.D.N.Y.). In *Reid,* Judge Michael B. Mukasey faced a situation almost identical to the instant case: a plaintiff with federal statutory claims[6] asserting that his claims were not

---

4. As noted, *supra,* at note 1, plaintiff has cross-moved to amend his Complaint to add additional defendants, and the Court examines this motion, *infra,* at Section IV of the opinion.

5. While the Release was executed by plaintiff and UNUM, there is no dispute that UNUM acted as defendants' agent with regard to fixing and providing plaintiff's LTD benefits. Plaintiff has not,

and could not, argue that the Release, if enforceable, would not bar any claim against defendants to recover additional LTD benefits.

6. Reid had sued under the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621 *et seq.,* Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.,* and the

barred by a release he had signed because the release was the product of economic duress. Judge Mukasey explained:

> [F]ederal law applies in determining whether the release was voidable. Some courts have suggested that a federal common law should be developed for this task. Others have suggested that simply because federal law governs does not mean that federal courts must adopt a uniform national rule, but that state law should provide the rule of law. I need not resolve this issue, since neither party has suggested that New York law differs in any material way from what would likely be adopted as the federal common law. This opinion relies principally on the Restatement and New York law for these relatively well-developed principles of contract law.

*Id.* at *6 n. 3 (internal citations omitted).

■ To establish that the formation of the Release was induced by economic duress, plaintiff must show that he was subjected to a wrongful threat precluding the exercise of free will. *See Acquaire v. Canada Dry Bottling,* 906 F.Supp. 819, 826 (E.D.N.Y.1995) (citing *Warnaco, Inc. v. Farkas,* 872 F.2d 539, 546 (2d Cir.1989)). Plaintiff also must demonstrate that the Release was obtained under the press of financial circumstances, with those circumstances permitting no other alternative. *See Reid,* 1997 WL 357969 at *7. Moreover, if plaintiff had the option of turning down additional severance and pursuing a legal claim, he had a reasonable alternative to signing the Release. *See id.*

■ Economic duress only renders an agreement voidable, not void. *See id.* at *10; *see also U.S. West Financial Services, Inc. v. Tollman,* 1992 WL 58863 at *2 (S.D.N.Y.); RESTATEMENT (SECOND) OF CONTRACTS § 175 (1979). "A voidable contract is one where one or more parties have the power, by a manifestation of election to do so, to avoid the legal relations created by the contract, or by ratification of the contract to extinguish the power of avoidance." *Reid,* 1997 WL 357969 at *10 (quoting RESTATEMENT (SECOND) OF CONTRACTS § 7 (1981)). Thus, if a party enters a contract

under duress, once the duress is removed the party claiming duress must choose either to repudiate the contract promptly or to acquiesce to its terms pursuant to the doctrine of ratification. *See Reid,* 1997 WL 357969 at *10. In addition, a party seeking to avoid enforcement of a release must satisfy the "tender-back" requirement, which is:

> an application to releases of the generally applicable ratification doctrine. . . . Under the tender back requirement, one who seeks to avoid the effect of a release must first return or tender the consideration paid him in connection with his execution of the release. . . . In order to avoid ratification at common law, the consideration received needed to be tendered back.

*Id.* (internal quotation omitted).

■ Applying these legal standards to the undisputed facts in the instant case, it is readily apparent that plaintiff cannot avoid enforcement of the Release. A close reading of his affidavit reveals that Harless alleges only that UNUM threatened to cut off his benefits if he did not sign "a sweeping and intrusive release for information involving everything from my credit report to my legal affairs." Harless Aff. at ¶ 52. This type of release (of information) is entirely distinct from the Settlement and Release of October 5, 1995. Harless goes on to explain that he worried that UNUM would cut off his benefits if he did not enter into a settlement. *See id.* at ¶¶ 55–56. However, he never claims that UNUM threatened to do anything to him if he failed to sign the Release. As plaintiff does not assert that his signing the Release was the product of a threat, he cannot satisfy one of the elements of a duress claim. Therefore, the Release is not voidable for economic duress.

■ Even if the Release were voidable by reason of economic duress, the Court would enforce the Release because plaintiff ratified it. In accordance with the terms of the Release, plaintiff received three payments of $50,000. *See* Harless Payment History, annexed as Exhibit A to Halton Aff. Plaintiff does not represent that he ever returned these funds to UNUM. Nor is there

Americans with Disabilities Act of 1990, 42     U.S.C. § 12101 *et seq.*

any evidence that plaintiff promptly repudiated the Release. Instead, plaintiff waited until contesting the instant motions, more than fifteen months after he signed the Release, to assert his duress claim. Thus, plaintiff has failed to tender back and has ratified the Release. The Court concludes that the Release is valid and enforceable, and operates to preclude plaintiff's claim for recovery of additional LTD benefits. Accordingly, the Court grants defendants' motion for summary judgment on plaintiff's second claim.

### III. Plaintiff's Claim for STD Benefits

■ The third claim plaintiff asserts in the Complaint is for $8296.00 (plus interest), to which he claims he is entitled under the STD Plan. *See* Complaint at ¶ 51. Originally, the Court had pendent jurisdiction over this state-law contract claim, pursuant to 28 U.S.C. § 1367(a). However, as the Court now grants defendants' motion to dismiss and or/for summary judgment on plaintiff's federal claims, it must re-examine its subject-matter jurisdiction over the third claim. As provided in § 1367(c), "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... (3) the district court has dismissed all claims over which it has original jurisdiction, ..." 28 U.S.C. § 1367(c). As defendants brought this motion early in the proceedings (within three months of the filing of the Complaint), the Court declines to exercise supplemental jurisdiction over plaintiff's contract claim for recovery of STD benefits. *See Harsco Corp. v. Segui,* 91 F.3d 337, 348 (2d Cir.1996) (finding that the district court properly declined to exercise supplemental jurisdiction over state claims after dismissing federal claims at an early stage of the proceedings). Therefore, plaintiff's third claim is dismissed without prejudice.

### IV. Plaintiff's Motion to Amend

■ Pursuant to Fed.R.Civ.P. 15, plaintiff cross-moves to amend his Complaint.

Specifically, plaintiff seeks (1) to add as defendants the plan administrators of each of the benefit plans from which he requested documents; (2) to add the LTD Plan as a defendant; and (3) to add a cause of action against UNUM for duress. The Second Circuit has noted:

> Rule 15(a) of the Federal Rules of Civil Procedure provides that permission to amend a pleading "shall be freely given when justice so requires." However, the district court may deny leave to replead if the proposed amendments would be futile.

*Albany Insurance Co. v. Esses,* 831 F.2d 41, 45 (2d Cir.1987), *overruled on other grounds, United States v. Indelicato,* 865 F.2d 1370 (2d Cir.1989); *see also Zahra v. Town of Southold,* 48 F.3d 674, 685–86 (2d Cir.1995); *Acito v. IMCERA Group,* 47 F.3d 47, 55 (2d Cir.1995).

In the instant case, the proposed amendments would be futile. The Court has determined (1) that plaintiff's claim under § 1132(c) is untimely, rendering futile the proposed addition of the plan administrators; (2) that the Release bars plaintiff's claim for recovery of benefits under the LTD Plan, rendering futile the proposed addition of the LTD Plan as a defendant; and (3) that the Release is valid and enforceable, rendering futile the proposed duress claim.[7] Therefore, as the proposed amendments to the Complaint would be futile, the Court denies plaintiff's Rule 15 motion.

### CONCLUSION

For the reasons stated in this Opinion, defendants' motion to dismiss and/or for summary judgment is HEREBY GRANTED, and plaintiff's motion to amend his Complaint is HEREBY DENIED.

**SO ORDERED.**

---

7. Moreover, the Court notes that it would decline jurisdiction over the duress claim, which would be brought under state law. *See, supra,* at Section III. Furthermore, at least one New York court has questioned whether economic duress can serve as an affirmative cause of action for money damages. *See Bank Leumi Trust Co. of New York v. D'Evori International, Inc.,* 163 A.D.2d 26, 558 N.Y.S.2d 909, 914 (1st Dep't. 1990).