**Unni P.K. KUMAR, Trustee of the Unni P.K. Kumar, M.D., Inc. Pension Plan, Plaintiff,**

v.

**Ralph P. HIGGINS, et al., Defendants.**

**No. 1:99 CV 3072.**

United States District Court, N.D. Ohio, Eastern Division.

April 10, 2000.

Jeffrey P. Posner, Cleveland, OH, for plaintiff.

Eric Larson Zalud, Jeffrey D. Zimon, Benesch, Friedlander, Coplan & Aronoff,

---

Cleveland, OH, Warren J. Williams, Rocky River, Ohio, Daniel F. Gourash, Porter, Wright, Morris & Arthur, Cleveland, OH, for defendants.

## MEMORANDUM OF OPINION AND ORDER

WELLS, District Judge.

This case is before the Court on four separate motions. On 4 February 2000, Defendants Ralph P. Higgins, Esq. and Higgins & Higgins Co., LPA (collectively, the "Higgins Defendants") filed a motion for summary judgment, and Dr. Unni P.K. Kumar filed a response on 8 March 2000. On 18 February 2000, cross-claimant Rita Williams filed both a response to the motion for summary judgment and a motion to stay this Court's ruling on the motion. On 9 March 2000, the Higgins Defendants replied to both of Ms. Williams's pleadings.

On 25 January 2000, Dr. Kumar filed his own motion to dismiss or, in the alternative, for summary judgment as to count two of Ms. Williams's counterclaim. On 11 February 2000, Ms. Williams responded to the motion and filed another motion to stay this Court's ruling. Dr. Kumar replied on 18 February 2000.

For the following reasons, the Higgins Defendants' motion is denied; Dr. Kumar's motion is granted; Ms. Williams's motions to stay are denied.

### I. *Factual and Procedural History*

Early in 1991, Dr. Kumar approached Ralph P. Higgins, Esq. about incorporating his medical practice and about the possibility of setting up a pension plan. (Kumar Aff. ¶ 12.) Mr. Higgins agreed, and on 7 June 1991, Dr. Kumar signed the Unni P.K. Kumar, M.D., Inc. Pension Plan and Trust (the "Plan"). Mr. Higgins's law firm, Higgins & Higgins Co., LPA, was the Plan's "sponsoring organization," and it agreed to "inform the Employer of any Amendments to this Plan or the discontinuance of its sponsoring this Plan." (Pl's Mtn., Ex. 1–24, at 4.) It also performed the "Pension and Profit Sharing Plan calcula-

tions for Plan year ending June 30, 1991." (Pl's Mtn., Ex. 1–22.)

One of the participants in the Plan was a man by the name of Leonard Quallich. He was married to Rita Quallich (now Rita Williams), but the two divorced in 1992. The divorce decree stated that Rita Williams "shall receive, pursuant to a Qualified Domestic Relations Order … two-thirds (⅔) interest in the pension and profit sharing plan of [Leonard Quallich] as that plan is most recently valued." (Pl's Mtn., Ex. 1–45, at 4.) In November 1993, Dr. Kumar's accountant prepared and sent to Mr. Higgins a statement detailing the amount Ms. Williams was to be paid. However, Mr. Higgins wrote up the Qualified Domestic Relations Order incorrectly—a mistake which allegedly resulted in an overpayment to Ms. Williams in the amount of $63,425.75. By 28 June 1995, the accountant had discovered the error and had informed both Mr. Higgins and Dr. Kumar. (Pl's Mtn., Ex. 1–4.)

Dr. Kumar apparently retained Mr. Higgins to recover the money (Pl's Mtn. at 5), and wrote to ask Mr. Higgins about his progress on 18 December 1996 and 7 April 1998 (Kumar Mtn., Exs. 1–7, 1–8). Dr. Kumar further states "Mr. Higgins assured [him] he would take care of the matter and do whatever was necessary to recover the money.... [A]t every annual meeting of the medical corporation and Plans until 1998, he repeated this assurance." (Kumar Aff. ¶ 13.)

Mr. Higgins was hospitalized in 1995, and Dr. Kumar was one of his diagnosing physicians. (Higgins Aff. ¶ 8.) Mr. Higgins returned to work on a limited basis in June of 1996, but was unable to work regularly until early 1997. (Higgins Aff. ¶ 8.) However, Dr. Kumar asserts he "was unaware that [Mr. Higgins] was unable to practice law, and indeed, he continued to represent the Corporation and Plans." (Kumar Aff. ¶ 13.) Dr. Kumar also states that, in 1988, Mr. Higgins told him "he would have his son take care of the annual

meeting or any problems while he was out of town. He assured me the Quallich overpayment matter was being handled." (Kumar Aff. ¶ 14.)

However, on 29 December 1998, Dr. Kumar decided he should have another law firm handle the Plan and retained new counsel. On 22 November 1999, he also filed a complaint against Mr. Higgins and Higgins & Higgins in the Court of Common Pleas for Cuyahoga County alleging "negligence, malpractice, and breach of fiduciary duty." (Cplt.¶ 4.) At the same time, he filed a claim against Ms. Williams for conversion, fraud, and breach of an implied contract. (Cplt.¶ 5.)

On 16 December 1999, Ms. Williams removed the case to this Court asserting federal question jurisdiction under ERISA. On 20 December 1999, she filed her answer and two counterclaims against Dr. Kumar. In counterclaim one, she alleged he breached his fiduciary duty to the Pension Plan. (Williams Ans. ¶ 4.) In counterclaim two, she alleged she had, on 2 August 1993, requested copies of the Summary Plan Descriptions, Summary Annual Reports and IRS Forms 550 for both the Pension and Profit Sharing Plans for the year 1992. (Williams Ans. ¶ 7.) However, Dr. Kumar allegedly "failed and refused to provide or comply with Ms. Williams's request for information regarding the Pension Plan and/or Profit Sharing Plan." (Williams Ans. ¶ 8.) As a result, Ms. Williams alleges Dr. Kumar is liable for up to $688,200 under 29 U.S.C. § 1132(c)(1), a provision which provides for damages of up to $100 per day for such a refusal. (Williams Ans. ¶ 9.) [1]

## II. *The Higgins Defendants' Motion for Summary Judgment*

The Higgins Defendants have filed a motion for summary judgment against Dr. Kumar on the grounds that Dr. Kumar's

claim of legal malpractice is barred by the statute of limitations.

## A. *Standard for Summary Judgment*

Summary judgment is appropriate if the evidence in the record shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The Supreme Court has further explained:

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the nonmoving party has the burden of proof in a case, the initial burden on the moving party under Rule 56 "may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Betkerur v. Aultman Hosp. Ass'n,* 78 F.3d 1079, 1087 (6th Cir.1996).

"When a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The "mere existence of a scintilla of evidence in support of the [nonmovant]'s position will be insufficient; there must be evidence on which the jury could reason-

---

1. On 21 January 2000, the Higgins Defendants filed a cross-claim against Ms. Williams, claiming Ms. Williams wrongfully retained the money and is therefore primarily liable to the plaintiff. (Higgins Ans. & Cross–Claim at 3.) Ms. Williams then filed her own cross-claim against the Higgins Defendants.

ably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the evidence must be viewed in the light most favorable to the party opposing the motion, *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, "conclusory allegations standing alone will not defeat a properly supported motion for summary judgment." *White v. York Int'l Corp.,* 45 F.3d 357, 363 (10th Cir.1995).

**B. *Law and Analysis***

Under O.R.C. § 2305.11(A)(1), "an action for malpractice other than an action upon a medical, dental, optometric, or chiropractic claim ... shall be commenced within one year after the cause of action accrues." The cause of action accrues "either when the client discovers or, in the exercise of reasonable diligence should have discovered, the resulting damage or injury, or when the attorney-client relationship *for that particular transaction or undertaking* terminates, whichever occurs later." *Omni–Food & Fashion, Inc. v. Smith,* 38 Ohio St.3d 385, 528 N.E.2d 941 (1988) (syllabus) (emphasis added). The *Omni–Food* Court further stated that "the question of when an attorney-client relationship for a particular undertaking or transaction has terminated is necessarily one of fact ." *Id.* at 388, 528 N.E.2d 941. If the lawyer continues to represent the client on general matters unrelated to the "particular undertaking," the statute of limitations will *not* be tolled. Such a rule "encourage[s] the parties to resolve their dispute without litigation and will stimulate the attorney to mitigate the client's damages." *Id.* at 387, 528 N.E.2d 941.

The Higgins Defendants argue the statute of limitations has passed regardless of whether the cause of action accrued on the date of discovery or the date their relationship with Dr. Kumar ended. According to their motion, Dr. Kumar discovered or

should have discovered the damage no later than 28 June 1995 when the accountant informed him of the overpayment. The "particular undertaking" ended when Mr. Higgins made his miscalculation because "the particular transaction which gave rise to plaintiff's cause of action was the unusual and 'one-time' calculation of defendant Quallich's distribution which occurred in January 1994. The Higgins Defendants had never before, nor have they after, calculated a distribution from the Plan for plaintiff." (Mtn. at 6.) Because more than one year has passed from both June of 1995 (the discovery date) and January of 1994 (the termination date), they conclude, the statute of limitations bars the present action.

However, Dr. Kumar has presented evidence that the "particular undertaking" at issue in this case was comprised of more than a one-time calculation. The undertaking encompassed both the calculation and the Higgins Defendants' promises that they would "handle" the process of recovering the money from Ms. Williams "by doing whatever was necessary and supervising the process." (Kumar Aff. ¶¶ 13–14.) Dr. Kumar supports this statement through his testimony that he "never received any correspondence from Mr. Higgins or his law firm indicating that they were not representing the Corporation, myself, or the Pension and Profit–Sharing Plans, including representing the Plans with respect to recovery of the overpayment." (Kumar Aff. ¶ 20.) To the contrary, Dr. Kumar wrote to Mr. Higgins as late as 7 April 1998 "to find out what the status of the problem with Mr. Quallich's overdraw is. Please keep me posted regarding what progress we are making." (Kumar Mtn., Ex. 1–8 .)

■ On these facts, summary judgment is not warranted. Even if Dr. Kumar should have discovered the malpractice in 1995, the legal relationship with respect to the entire transaction—the overpayment and the efforts to recover it—at least arguably did not end until he terminated his

relationship with the Higgins Defendants on 29 December 1998. Because he filed suit on 22 November 1999, less than one year had passed between the date the action accrued and the filing. Therefore, the statute of limitations had not yet run, and the Higgins Defendants' motion for summary judgment must be denied. Ms. Williams's motion to stay this Court's ruling is denied as moot.

### III. *Dr. Kumar's Motion to Dismiss Count Two of the Counterclaim*

In count two of her counterclaim, Ms. Williams alleged she requested information about the Plan from Dr. Kumar on 2 August 1993, but Dr. Kumar failed to respond. (Ans.¶ 7–8.) She further contends his actions were in violation of 29 U.S.C. § 1132(c)(1). (Ans.¶ 9.) Dr. Kumar has filed a motion to dismiss this counterclaim on the grounds that the statute of limitations has passed.

### A. *Standard for Motions to Dismiss*

When considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must:

> construe the complaint in the light most favorable to the plaintiff, accept all the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief ... However, the Court need not accept as true legal conclusions or unwarranted factual inferences.

*Grindstaff v. Green,* 133 F.3d 416, 421 (6th Cir.1998). The Court's task is thus "necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claims." *Miller v. Currie,* 50 F.3d 373, 377 (6th Cir.1995) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

### B. *Law and Analysis*

29 U.S.C. § 1132(c) states as follows:

> Any administrator ... who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c)(1).

ERISA contains no statute of limitations governing claims under this section. As a result, this Court must look to the most analogous state statute of limitations. *Meade v. Pension Appeals & Review Comm.,* 966 F.2d 190 (6th Cir.1992).

Ms. Williams claims Ohio's fifteen year statute of limitations for breach of contract provides the most fitting analogy. See *Starr v. JCI Data Processing, Inc.,* 767 F.Supp. 633 (D.N.J.1991); *Abbott v. Drs. Ridgik, Steinberg & Assoc.,* 609 F.Supp. 1216 (D.N.J.1985). However, the Sixth Circuit consistently refers to awards under Section 1132(c)(1) not as contract remedies, but as "penalties." *See, e.g., Bartling v. Fruehauf Corp.,* 29 F.3d 1062, 1068 (6th Cir.1994) (noting "the statute expressly grants a district court discretion in imposing penalties for an employer's failure to disclose"); *Lewandowski v. Occidental Chemical Corp.,* 986 F.2d 1006, 1008 (6th Cir.1993) (noting that Section 1302(c) authorizes courts "to impose a fixed penalty for ERISA procedural violations" and that the "penalty" can be $100 per day); *Knickerbocker v. Ovako–Ajax, Inc.,* No. 98–1319, 1999 WL 551409 (6th Cir. July 20, 1999) (noting the statute "authorizes penalties").

Furthermore, the *Bartling* Court stated the plaintiffs in that case had "correctly point[ed] out that the purpose of the stat-

ute was to induce administrators to timely provide participants with requested plan documents, and to penalize failures to do so." *Bartling*, 29 F.3d at 1068. In other words, the Sixth Circuit agreed the purpose of the Section was not to make plan participants whole or to provide substantive relief. Instead, the purpose was to punish administrators who failed to comply. Other courts have agreed. *See Brown v. Ampco–Pittsburgh Corp.*, 876 F.2d 546, 550–51 (6th Cir.1989) (stating that "the failure to comply with ERISA's procedural requirements is not ordinarily a basis for substantive relief"); *Groves v. Modified Retirement Plan for Hourly Paid Employees*, 803 F.2d 109, 117 (3d Cir.1986) (stating the purpose of § 1132(c)(1) was to induce plan administrators to comply with procedural requirements and holding that § 1132(c)(1) "is a penal provision"); *Glavor v. Shearson Lehman Hutton, Inc.*, 879 F.Supp. 1028, 1034–35 (N.D.Cal.1994) (stating that the penalties provisions of § 1132(c) were intended to induce compliance by plan administrators and were "not intended to compensate a plan participant for injuries suffered as a result of an administrator's wrongful refusal or failure to provide documents").

■ The holdings in the above-cited cases highlight the Sixth Circuit's perception that the damages portion of § 1132(c)(1) is a penalty. As a result, the closest analogous state statute of limitations is O.R.C. § 2305.11(A). Under this statute, "an action upon a statute for a penalty or forfeiture shall be commenced within one year after the cause of action accrues." Because Ms. Williams requested the information on 2 August 1993, she is beyond the statute of limitations in count two of her counterclaim. Therefore, Dr. Kumar's motion to dismiss Count Two of the counterclaim shall be granted.

## C. *Ms. Williams's Motion to Stay*

Ms. Williams has asked the Court to stay its ruling on Dr. Kumar's motion to dismiss because discovery has not commenced and she asserts she needs to take several depositions in order to determine the date her cause of action accrued. "Without these depositions," she contends, "it is impossible to know when the Plans received Williams's request for information, what documents were available responsive to the request, when Williams learned that the Plans would not produce the requested documents and what the appropriate amount of relief should be under 29 U.S.C. § 1132(c)(1)." (Mtn. to Stay Pl's Mtn. at 2.)

However, 29 U.S.C. § 1132(c)(1) states clearly the plan administrator must comply with any request within 30 days, and Ms. Williams's own complaint says she made the request on 2 August 1993. (Williams Ans. ¶ 7.) As a result, her cause of action would accrue thirty days later, and she has failed to show how discovery could shed additional light on the issue. Therefore, her motion to stay this Court's ruling is denied.

### IV. *Conclusion*

The Higgins Defendants' motion for summary judgment is denied. Dr. Kumar's motion to dismiss count two of Mr. Williams's counterclaim is granted. Both of Ms. Williams's motions to stay are denied.

IT IS SO ORDERED.

### *PARTIAL JUDGMENT ENTRY REGARDING COUNT TWO OF COUNTERCLAIM*

This Court, having previously entered its memorandum of opinion and order granting plaintiff's motion to dismiss count two of Rita Williams's counterclaim hereby enters judgment in favor of plaintiff Unni P.K. Kumar and against counterclaimant Rita Williams as to count two of her counterclaim. Ms. Williams shall pay costs.

The case shall proceed with respect to all of Dr. Kumar's claims and the remaining counts in Ms. Williams's counterclaim.

IT IS SO ORDERED.