# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3411

_____

Gene Iverson,                                           *
                                                        *
        Appellant,                                 *     Appeal from the United States
                                                        *     District Court for the
    v.                                                 *     District of North Dakota.
                                                        *
Ingersoll-Rand Company, formerly                        *          [UNPUBLISHED]
known as Melroe Company, now                            *
known as Bobcat Company,                                *
                                                        *
                                                        *
        Appellee.                                  *

_____

Submitted: October 21, 2004
Filed: December 30, 2004

_____

Before LOKEN, Chief Judge, MAGILL, and BENTON, Circuit Judges.

_____

PER CURIAM.

     Plaintiff-Appellant Gene Iverson filed suit against Ingersoll-Rand claiming age discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634, and the North Dakota Human Rights Act (NDHRA), N.D. Cent. Code § 14-02.4; a violation of section 502(c)(1) of the Employment Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(c)(1), for Ingersoll's alleged failure to respond in a timely manner to a request for calculation of pension benefits; and a

violation of ERISA's fiduciary duty requirements. The district court[1] granted summary judgment to Ingersoll on all issues, and this appeal follows. We have jurisdiction under 28 U.S.C. § 1291. For the reasons stated below, we affirm the district court.

## I.

Gene Iverson was a long-term employee of Melroe Company. Melroe was a division of Clark Equipment Company, whose corporate parent is Ingersoll-Rand Company. Ingersoll had demanded fifteen percent growth from its businesses, and the Spra-Coupe line was falling short of that target. In 1996, Melroe President Charles Hoge cautioned that if things didn't improve, the group would not survive. In March 1997, Melroe instituted cost-cutting measures due to Spra-Coupe's continued lack-luster performance (in the view of Ingersoll). Part of this process was the laying off of two district managers. In April 1997, Iverson was notified that he was going to be laid off. Iverson was given a one-year recall possibility for his previous job, but was told that prospects of a recall were not good. Iverson worked as a district manager until July 1, 1997, when he was laid off.

In August 1997, Iverson accepted a job in Montana as a sales manager with a competing firm, but remained on layoff status with Melroe. At about the same time, Melroe decided, with the approval of Ingersoll, to sell the Spra-Coupe business. The transaction concluded on September 30, 1998, at which time all district managers were laid off.

Prior to the selling of the Spra-Coupe line, two district managers resigned. This led Melroe to bring back a retired district manager, Ernie Haaland, and hire 31-

---

[1]The Honorable Daniel L. Hovland, Chief Judge, United States District Court for the District of North Dakota.

year-old Byron King to fill the temporary openings. Iverson was not contacted and did not apply for the positions.

During the meeting on April 21,1997, at which he was informed he would be laid off, Iverson verbally requested a calculation of his pension benefits. On July 17, 1997, after receiving at least two reminder calls and a letter dated June 16, Melroe Benefits Clerk Pat Potter finally mailed the pension calculations.

After his layoff on July 1, 1997, Iverson received a letter from the Ingersoll-Rand Service Center dated September 22, 1997, which stated that he had been terminated (rather than laid off). This error had ramifications for Iverson's pension. It took several phone calls and letters, as well as several months, to get the error corrected. The district court found the error to have been corrected by January 8, 1998.

Iverson also wrote to Ingersoll to get his address updated to reflect his new Montana address. It again took several months to get the address changed, but the error was corrected by July 1998. Full distribution of the pension was taken in September 1998.

On September 1, 1998, Iverson filed a Charge of Discrimination with the North Dakota Department of Labor and the Equal Employment Opportunity Commission alleging that Melroe's failure to rehire or recall him violated the NDHRA and the ADEA. He argued that the temporary hiring of Byron King, age 31, was age discrimination. On April 2, 2001, the North Dakota Department of Labor closed its investigation of Iverson's age discrimination claim and issued a notice of its determination to Iverson on April 27, 2001. On January 29, 2002, the EEOC closed its investigation and issued Iverson a Notice of Right to Sue.

The instant case was filed on April 26, 2002, alleging the age discrimination claims addressed by the agencies as well as ERISA claims based on the delay in sending Iverson pension calculations and an alleged failure of the fiduciary duty stemming from the coding error and the failure to correct his address. Ingersoll repeatedly stated its position that the wrong party was named in the age discrimination claims, and Iverson filed a motion to amend his complaint (which Ingersoll did not oppose). The motion was approved on January 16, 2003. On February 27, 2003, Iverson filed his amended complaint which acknowledged that Melroe was his employer, but failed to name Melroe as a party, leaving Ingersoll as the sole defendant. On June 27, 2003, after discovery was complete, Ingersoll moved for summary judgment on all issues. The district court granted the motion, ruling that Ingersoll was not Iverson's "employer" for discrimination liability and that the ERISA claims were time barred.

## II.

Questions of law are reviewed de novo. See, e.g., Miles v. Barnhart, 374 F.3d 694, 698 (8th Cir. 2004). Summary judgment is a question of law and is therefore reviewed de novo. Palmer v. Ark. Council on Econ. Educ., 154 F.3d 892, 895 (8th Cir. 1998). Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Clark v. Kellogg Co., 205 F.3d 1079, 1082 (8th Cir. 2000). If the movant can show that there is no issue as to any material fact, the non-movant must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986).

## A.

For ADEA liability to be imposed, "'there must be an employment relationship between the plaintiff and the defendant.'" Palmer, 154 F.3d at 895 (quoting Deal v. State Farm County Mut. Ins. Co., 5 F.3d 117, 118 n.2 (5th Cir. 1993)). To hold a parent corporation liable for its subsidiary's discrimination, there must be evidence that the parent corporation exercised control over the "individual employment decision[]" involved, namely the decision to terminate and not rehire. Leichman v. Pickwick Int'l, 814 F.2d 1263, 1268 (8th Cir. 1987). The penultimate question is: "'[W]hat entity made the final decisions regarding employment matters related to the person claiming discrimination?'" Frank v. U.S. West, Inc., 3 F.3d 1357, 1363 (10th Cir. 1993) (quoting Trevino v. Celanese Corp., 701 F.2d 397, 404 (5th Cir. 1983)). More than a normal parent-subsidiary relationship is required. See Leichman, 814 F.2d at 1268.

Iverson initially contends that Ingersoll was the "controlling force" behind Melroe's employment decisions because Ingersoll demanded a profitability increase and ultimately approved the sale of the Spra-Coupe line and thus was controlling his employment. These decisions, however, are relatively normal within the parent-subsidiary relationship and do not show that Ingersoll exercised control over the employment decision in this case. Iverson does not allege facts that would show the sort of "control [of] day-to-day employment decisions" necessary for liability. Frank, 3 F.3d at 1363.

Iverson alternatively argues that because various documents had the name of Ingersoll-Rand on them (such as Melroe letterhead that also used the name of Ingersoll-Rand), Ingersoll had held itself out as Iverson's employer. He also argues that in the proceedings before the North Dakota Department of Labor, Ingersoll "stepped into the role" of the responding party. Iverson, however, cites no precedent and makes no independent argument as to why either of these claims would transform

Ingersoll into Iverson's employer for ADEA purposes. These issues are simply irrelevant to establishing the control necessary to satisfy the statute.

The standard for determining if a parent corporation is an "employer" is whether the parent corporation had actual control over the allegedly discriminatory action.[2] Here there was no such evidence, making summary judgment proper on this issue.

**B.**

Section 502(c)(1) of ERISA imposes a penalty of up to $100/day if information requested by a plan participant is not mailed within thirty days. 29 U.S.C. § 1132(c)(1). This section does not contain a statute of limitations, so federal courts look to state law and choose the most analogous statute of limitations. See Shaw v. McFarland Clinic, P.C., 363 F.3d 744, 746 (8th Cir. 2004). The district court below determined that because this court had characterized the $100/day penalty as a "statutory penalty . . . to punish noncompliance," Chesnut v. Montgomery, 307 F.3d 698, 704 (8th Cir. 2002), that it was in fact a "penalty" and therefore held that the three-year North Dakota statute of limitations for "action[s] upon a statute for a penalty or forfeiture" applied. See N.D. Cent. Code § 28-01-17(2). Because Iverson's claim was filed approximately four and one-half years after the claim accrued (claim accrued in January 1998 and suit was filed in April 2002), the district court dismissed it as untimely.

Iverson relies on this court's statements in Adamson v. Armco, Inc., 44 F.3d 650, 652 (8th Cir. 1995), that "a claim for ERISA benefits is characterized as a

---

[2]The district court found the pendent state law claim to be barred on the same grounds. On appeal, Iverson does not allege error on this point, and we therefore do not review it.

contract action." Thus, Iverson argues that North Dakota's general six-year statute of limitations for contract actions should apply. See N.D. Cent. Code § 28-01-16.

In Groves v. Modified Retirement Plan, 803 F.2d 109, 117 (3d Cir. 1986), the Third Circuit found section 502(c)(1) to be "penal" for statutory construction purposes. This has lead several district courts to apply statutes of limitations similar to the one selected by the district court below. See, e.g., Kumar v. Higgins, 91 F. Supp. 2d 1119, 1123 (N.D. Ohio 2000); Harless v. Research Inst. of Am., 1 F. Supp. 2d 235, 240 (S.D.N.Y. 1998). We agree. As the district court noted, and Ingersoll argues here, section 502(c)(1) is of a penal rather than a compensatory nature. A $100/day sanction for untimely disclosure of information is, as this court has explained, designed "to punish noncompliance," Chesnut, 307 F.3d at 704, and "to provide . . . an incentive to timely respond to requests for documents," Kerr v. Charles F. Vatterott & Co., 184 F.3d 938, 948 (8th Cir. 1999). Kerr also noted that there is no need to show any prejudice for the imposition of penalties under section 502(c)(1). Id. This is inconsistent with a compensatory scheme. The district court properly found section 502(c)(1) to be a statutory penalty scheme and selected the proper North Dakota statute of limitations. Iverson's claim for ERISA penalties is therefore time barred.

## C.

Iverson's claim for breach of fiduciary duty under ERISA is subject to a three-year statute of limitations contained within ERISA. See 29 U.S.C. § 1113(2) (three-year limit from when plaintiff had actual knowledge of breach). Iverson, while not explicitly conceding that his claims are barred by the statute of limitations, argues that the district court should have tolled the statute of limitations under North Dakota's doctrine of equitable tolling.

The district court analyzed the claim under the framework suggested by Iverson and rejected his claim. Neither Iverson nor the district court below explained why North Dakota tolling principles would apply to a federal statutory claim with a federal statute of limitations. Cf. Bell v. Fowler, 99 F.3d 262, 267 n.3 (8th Cir. 1996) (opining that the Supreme Court has indicated that it is proper to borrow state tolling law when borrowing state statutes of limitations). There is no reason why North Dakota law would apply in this situation, and we therefore analyze the claim under the federal standards.

"Equitable tolling is appropriate only where the circumstances that cause a plaintiff to miss a filing deadline are out of his hands." Heideman v. PFL, Inc., 904 F.2d 1262, 1266 (8th Cir. 1990). This is "an exceedingly narrow" doctrine that applies only when "extraordinary circumstances" beyond the plaintiff's control prevent filing on time. Jihad v. Hvass, 267 F.3d 803, 805 (8th Cir. 2001). Iverson claims that the ERISA statute of limitations should have been tolled while he pursued his age discrimination claims in state and federal agencies. However, the ERISA claim at issue was not before the state or federal agencies. Iverson merely waited until he could bring all of his claims together. While consolidation of claims is perhaps a noble goal to be encouraged, Congress has explicitly determined that plaintiffs have three years to bring breach of fiduciary duty claims under ERISA. Although Iverson knew of all of the underlying facts (and never asserts that he did not), he simply delayed filing. This claim was therefore time barred and summary judgment was proper.

## III.

For the aforementioned reasons, we affirm the judgment of the district court.

_____