158 F.Supp.2d 976 (2001)
Bonnie L. GEISSAL, Plaintiff,
v.
MOORE MEDICAL CORP., Group Benefit Plan of Moore Medical Corp., and Herbert Walter[1], Defendants.
No. 4:94 CV 1263 DDN.
United States District Court, E.D. Missouri, Eastern Division.
March 29, 2001.
*977 S. Sheldon Weinhaus, Weinhaus & Dobson, St. Louis, MO, for plaintiff.
Kathi L. Chestnut, Edward M. Goldenhersh, Daniel J. Schwartz, Greensfelder & Hemker, St. Louis, MO, for defendant.

MEMORANDUM
NOCE, United States Magistrate Judge.
This action is before the court upon defendants' motion for partial summary judgment on Count I of plaintiff's complaint, specifically on the issue of damages (Doc. No. 139), and plaintiff's cross-motion for summary judgment on appropriate equitable relief (Doc. No. 139). The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).
Plaintiff James Geissal commenced this action in June 1994, alleging four counts under the Employee Retirement Income Security Act ("ERISA"), amended by the Comprehensive Omnibus Budget Reconciliation Act of 1986 ("COBRA"). Defendants are plaintiff's former employer, Moore Medical Corporation ("Moore"), Group Benefit Plan of Moore Medical Corporation, and Herbert Walter, the Plan Administrator.
Plaintiff alleged four counts for relief. Count I alleged that defendants violated COBRA by failing to provide him with continuation coverage after Moore terminated his employment. Count II alleged that Moore was estopped from denying him COBRA coverage because plaintiff relied *978 on its initial representation that he was entitled to COBRA coverage. Count III alleges that defendants waived any differing construction or interpretation of plan provisions. Count IV alleges that Herbert Walter, the Plan Administrator, failed to provide requested documents in violation of 29 U.S.C. § 1024(b)(4).
Plaintiff has moved for partial summary judgment. In March 1996, this court denied plaintiff's motion for partial summary judgment and sua sponte granted partial summary judgment for defendants.[2]Geissal v. Moore Medical Corp., 927 F.Supp. 352, 361 (E.D.Mo.1996). The Eighth Circuit affirmed on interlocutory appeal. Geissal v. Moore Medical Corp., 114 F.3d 1458 (8th Cir.1997). However, the United States Supreme Court vacated the opinion of the Eighth Circuit and remanded the case. Geissal v. Moore Medical Corp., 524 U.S. 74, 118 S.Ct. 1869, 141 L.Ed.2d 64 (1998).
Plaintiff then moved for reconsideration of the court's ruling on plaintiff's earlier motion for partial summary judgment. In March 1999, the court granted plaintiff's motion and determined that defendant Moore Medical Corporation was obligated to provide COBRA coverage to James Geissal, but that plaintiff's entitlement to other relief would have to await the conclusion of any trial or other factfinding conducted by the court. See Order and Memorandum, filed March 23, 1999 (Doc. No. 83). In September 1999, the court ordered the parties to file cross-motions for partial summary judgment on certain liability issues. See Order, filed Sept. 23, 1999 (Doc. No. 119).
The Court must grant summary judgment if the pleadings, admissions, stipulations, depositions and affidavits demonstrate that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Board of Educ., Island Trees Union Free School Dist. No. 26 v. Pico, 457 U.S. 853, 863, 102 S.Ct. 2799, 73 L.Ed.2d 435 (1982) (plurality opinion). The moving party must initially demonstrate the absence of an issue for trial. Celotex, 477 U.S. at 323, 106 S.Ct. 2548. Any doubt as to the existence of a material fact must be resolved in favor of the party opposing the motion. Pico, 457 U.S. at 863, 102 S.Ct. 2799.
Once a motion is properly made and supported, the non-moving party may not rest upon the allegations in the pleadings but must instead demonstrate the existence of admissible evidence of specific facts showing that there is a genuine issue of material fact for trial. Fed.R.Civ.P. 56(e); Buford v. Tremayne, 747 F.2d 445, 447 (8th Cir.1984). Although the court views the facts in the light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be genuine dispute over those facts that could actually affect the outcome of the lawsuit." Webb v. Lawrence County, 144 F.3d 1131, 1135 (8th Cir.1998).
For the convenience of the parties, the court will restate the undisputed facts which the court set forth in its March 23, 1999 ruling:
"1. On July 16, 1993, Moore Medical Corporation terminated James Geissal from employment. At the time of his termination, Geissal was 62 years old and had cancer. During his employment at Moore, Geissal was a participant in a health benefits *979 plan, the Group Benefit Plan of Moore Medical Corp., sponsored by Moore for its employees.
"2. Moore Medical Corp. is an employer and the plan sponsor within the meaning of 29 U.S.C. § 1102(5) and (16)(B), of defendant Group Benefit Plan of Moore Medical Corp. (the Plan). The Plan is an employee welfare benefit plan as defined in 29 U.S.C. § 1002(1). Defendant Group Benefit Plan of Moore Medical Corp. provides for the payment and reimbursement to plan participants of various medical expenses and is a group health plan as defined in 29 U.S.C. § 1167(1).
"3. While Geissal was employed at Moore, his wife, Bonnie, was employed by Trans World Airlines (TWA). By reason of Bonnie Geissal's employment at TWA, James Geissal was a covered dependent eligible for coverage under the health insurance policy issued by Aetna Life Insurance Company. Aetna was the health provider or third-party administrator under the TWA plan provided by TWA for its employees. Geissal's coverage through his wife's plan preceded Geissal's termination by Moore.
"4. Upon Geissal's termination at Moore Medical, Geissal received a notice of his right under COBRA to continue health insurance coverage under Moore's benefit plan. He accepted Moore's offer and elected to continue receiving group health coverage under Moore's Plan. He began making premium payments, which the defendants accepted. Approximately six months after his termination, by letter dated January 27, 1994, defendants informed Geissal that they had determined he was not entitled to COBRA coverage because he was already covered under a group policy with Aetna. Geissal was told that the premiums he had already paid would be returned and that those who provided him with medical care during that period would not be paid by the Plan.
"5. Moore's plan had an annual deductible of $150. It also provided for a lifetime maximum amount of benefits. TWA's plan through Aetna had an annual deductible of $500 per year per person and also provided a lifetime maximum amount of benefits.
"6. At the time Geissal was terminated, he requested and received a service letter pursuant to Missouri Revised Statute § 290.140. At the time he was terminated, he considered whether he should consult an attorney to investigate what rights and claims he might have against Moore because he felt he had been unfairly terminated. Geissal decided not to do so, because his main concern was that he have full and adequate health insurance. Moore representatives encouraged him to make the COBRA election, which did much to assuage his feelings about his discharge. At about this time, and shortly after the issuance of the service letter, the Plan or its reinsurer were making large payments for medical care provided to Geissal prior to his termination. Because he was offered the COBRA continuation coverage, Geissal did not look for another insurance carrier."
Order and Memorandum, at 2-3.

Arguments in Support of Both Parties' Motions
In support of their motion for partial summary judgment, defendants argue that plaintiff's damages are limited to Geissal's unreimbursed out-of-pocket medical expenses that would have been covered under the Moore Plan had he been provided with COBRA continuation coverage, less deductibles and premium payments due Moore for such coverage. Defendants argue that the reason for this is that TWA/Aetna covered much of plaintiff's expenses. Any claim that TWA/Aetna may have had on Geissal's estate is barred by the applicable statute of limitations. *980 Therefore, to allow plaintiff to recover for benefits paid by TWA/Aetna that TWA/Aetna is not able to then recover from plaintiff would present a windfall to the plaintiff, which is prohibited.
Defendants claim that Mr. Geissal's unreimbursed out-of-pocket medical expenses, which would have been covered under the Moore Plan, were $2,614.08. Defendants then claim that the amount of deductibles, copayments and premium payments that Geissal would have been required to pay for COBRA continuation coverage under the Moore Plan would have been $2,973.18. Therefore, defendants argue, because the sum of the continuation coverage premiums and deductibles exceeds plaintiff's unreimbursed out-of-pocket medical expenses by $359.10, plaintiff suffered no damages and that summary judgment should be granted in favor of defendants on the issue of damages.
In her combined memorandum, plaintiff argues that defendants have been unjustly enriched by the failure of the Moore Plan to provide benefits to Mr. Geissal. Therefore, plaintiff argues, she is entitled to "other appropriate equitable relief," as provided by 29 U.S.C. § 1132(a)(3), in the form of restitution.
Plaintiff disputes defendant's argument that TWA/Aetna would be unable to recover any money from Geissal's estate. She argues that because ERISA preempts Missouri law, nothing in Missouri law could stop TWA/Aetna from bringing an ERISA action against the estate for the enforcement of an equitable lien or the creation of a constructive trust, or from intervening in the present action. Plaintiff also points out that Aetna/TWA uses only the services of doctors, labs and hospitals who agree to provide discounts to TWA/Aetna. On the other hand, plaintiff argues, had the Moore Plan covered the benefits, the providers would have been able to charge their full price for the medical services rendered.
Plaintiff claims there is no valid reason to exclude the medical expenses of Mr. Geissal in Greece because the Moore Plan provided for the funding of alternative medical treatment, considered on a case by case basis.[3] Plaintiff finally argues that Mr. Geissal was entitled to an extension of COBRA benefits beyond January 17, 1995, and that she is entitled to reimbursement of amounts not paid by either plan.
In defendants' memorandum in response to plaintiff's cross-motion for summary judgment and in reply to plaintiff's response to defendants' motion for partial summary judgment, defendants argue that plaintiff is not entitled to relief under § 1132(a)(3) because she has a claim for benefits available under § 1132(a)(1)(B). Defendants further argue that in order to obtain relief under § 1132(a)(3), plaintiff must first establish a breach of fiduciary duty and that she has failed to do so. Finally, defendants argue that plaintiff's requested relief is not equitable relief and that she is not entitled to the amount claimed.
Finally, plaintiff argues in her reply that defendants may not raise the fiduciary responsibility issue for the first time in their reply. Nevertheless, plaintiff argues that restitution and other equitable relief are available as remedies under ERISA and COBRA absent proof of breach of fiduciary duty. Plaintiff also argues that her claims are for equitable restitution and do not amount to claims for legal damages.

*981 Discussion

The civil enforcement provision of ERISA, 29 U.S.C. § 1132, provides, in relevant part:
(a) Persons empowered to bring a civil action
A civil action may be brought 
(1) by a participant or beneficiary 
(A) for the relief provided for in subsection (c) of this section, or
(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
* * * * * *
(3) by a participant, beneficiary, or fiduciary
(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or
(B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.
29 U.S.C. § 1132(a).
In Count I of her complaint, plaintiff pleaded the following:
WHEREFORE, plaintiff prays for compensatory damages and for prejudgment interest on past due benefits, for such further injunctive and equitable relief as may be appropriate in the circumstances, for penalties allowable under 29 U.S.C. § 1132(c), for his costs and expenses including a reasonable attorney's fee, for punitive damages if found to be appropriate, and for such other and further relief as may be meet and just in the premises.
Complaint, filed June 30, 1994 (Doc. No. 1), at 6. Both parties recognize that compensatory damages are not available under § 1132(a)(3). See Kuhl v. Lincoln National Health Plan of Kansas City, 999 F.2d 298, 304-05 (8th Cir.1993), cert. denied, 510 U.S. 1045, 114 S.Ct. 694, 126 L.Ed.2d 661 (1994). However, plaintiff argues that she is entitled to "other appropriate equitable relief" available under § 1132(a)(3). Specifically, as noted above, she seeks restitution.
The United States Supreme Court has noted the following:
[T]he statute authorizes "appropriate" equitable relief. We should expect that courts, in fashioning "appropriate" equitable relief, will keep in mind the "special nature and purpose of employee benefit plans," and will respect the "policy choices reflected in the inclusion of certain remedies and the exclusion of others." Thus, we should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be "appropriate."
Varity Corporation v. Howe, 516 U.S. 489, 515, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) (quoting Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)) (other citations omitted). The Eighth Circuit, interpreting Howe, held that "where a plaintiff is `provided adequate relief by [the] right to bring a claim for benefits under ... § 1132(a)(1)(B),' the plaintiff does not have a cause of action to seek the same remedy under § 1132(a)(3)(B)." Conley v. Pitney Bowes, 176 F.3d 1044, 1047 (8th Cir.1999) (quoting Wald v. Southwestern Bell Corp. Customcare Medical Plan, 83 F.3d 1002, 1006 (8th Cir.1996)), cert. denied, 528 U.S. 1136, 120 S.Ct. 979, 145 L.Ed.2d 930 (2000). See also Hall v. Lhaco, Inc., 140 F.3d 1190, 1197 (8th Cir.1998).
The Supreme Court in the case at bar noted and held the following:

*982 The issue in this case is whether 29 U.S.C. § 1162(2)(D)(e) allows an employer to deny COBRA continuation coverage to a qualified beneficiary who is covered under another group health plan at the time he makes his COBRA election. We hold that it does not.
Geissal, 524 U.S. at 76, 118 S.Ct. 1869. Therefore, the court held that defendants were obligated to provide plaintiff with coverage under COBRA.
However, other courts have held that when a beneficiary has died, benefits under the plan are no longer recoverable under § 1132(a)(1). See Turner v. Fallon Community Health Plan, 127 F.3d 196, 198 (1st Cir.1997), cert. denied, 523 U.S. 1072, 118 S.Ct. 1512, 140 L.Ed.2d 666 (1998). Turner specifically held that "[t]he relief expressly provided [under § 1132(a)(1)(B)] is to secure benefits under the plan rather than damages for a breach of the plan." Id. Another court has noted the following:
Mr. Foster is not the participant or beneficiary, so he may not personally bring an ERISA suit. As the representative for his wife's estate, he may bring a suit on her behalf. However, the only recovery allowed by [§ 1132(a)(1)(B)] is a recovery of plan benefits. Due to Mrs. Foster's death, an award of benefits is not available.
Foster v. Blue Cross and Blue Shield of Michigan, 969 F.Supp. 1020, 1029 (E.D.Mich.1997). Therefore, § 1132(a)(1) does not provide plaintiff with an adequate remedy, and the court must consider the propriety of other appropriate equitable relief under § 1132(a)(3).
The Eighth Circuit has succinctly delineated the difference between equitable restitution and compensatory restitution as follows:
Though we sometimes speak of restitution in generic terms, restitution may be either equitable or compensatory. The basic distinction between equitable restitution and compensation focuses on the genesis of the award sought by plaintiff. A restitutionary award focuses on the defendant's wrongfully obtained gain while a compensatory award focuses on the plaintiff's loss at the defendant's hands. Restitution seeks to punish the wrongdoer by taking his ill-gotten gains, thus, removing his incentive to perform the wrongful act again. Compensatory damages on the other hand focus on the plaintiff's losses and seek to recover in money the value of the harm done to him.
Kerr v. Charles F. Vatterott & Co., 184 F.3d 938, 944 (8th Cir.1999) (citations and footnote omitted). As noted above, plaintiff argues that defendants were unjustly enriched by its failure to pay for plaintiff's medical expenses and that the providers were unable to charge their full rates because TWA/Aetna required them to accept lower rates.
The Ninth Circuit has considered a case similar to the one at bar. In Bast v. Prudential Ins. Co. of America, 150 F.3d 1003 (9th Cir.1998), cert. denied, 528 U.S. 870, 120 S.Ct. 170, 145 L.Ed.2d 144 (1999), Rhonda Bast was diagnosed with breast cancer. Her oncologist recommended that she undergo an autologous bone marrow transplant procedure. Id. at 1005. Her insurance company, Prudential, initially denied coverage for the procedure in December 1991, but later reconsidered and said that it would provide coverage in February 1992. Id. at 1006. However, by this time, Bast's cancer had spread and it was too late for her to undergo the procedure. Id. Her health declined and she died in January 1993. Id.
Her husband and minor son filed a federal complaint alleging state law claims and ERISA claims. Id. The district court held that plaintiffs' state law claims were *983 preempted by ERISA and there was no remedy available under ERISA for the ERISA claims. Id. The plaintiffs argued that they should be allowed to recover the equitable remedy of restitution under § 1132(a)(3) as other appropriate equitable relief. Id. at 1010. The court of appeals held as follows:
The district court concluded that to grant restitution to the Basts would be equivalent to awarding them money damages, and such an award would not be an equitable remedy. The court stated:
[I]n this case, where the only conceivable remedy that I could foresee would be the cost of the procedure which the plaintiff was not given at a time when it would have hopefully provided some relief for her, is the same as really a legal recovery of cost ... I see no other possible theory of restitution that would be "appropriate" in the sense of it being different than a legal remedy.
We agree.
Id.
The court concludes that the reasoning of the Ninth Circuit in Bast is relevant and persuasive. An award of restitution in this case would be the equivalent of awarding compensatory damages. This would be contrary to Supreme Court precedent which dictates that "section 1132(a)(3) recovery is limited to classic equitable remedies such as injunctive, restitutionary, or mandamus relief, and does not extend to compensatory damages." Kerr, 184 F.3d at 943 (citing Mertens v. Hewitt Assocs., 508 U.S. 248, 256-58, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993)). See also, Rogers v. Hartford Life and Accident Ins. Co., 167 F.3d 933, 944 (5th Cir.1999) ("other appropriate equitable relief" available in § 1132(a)(3) did not include "makewhole relief" in the form of medical expenses); Allinder v. Inter-City Prods. Corp., 152 F.3d 544, 552 (6th Cir.1998) (compensatory damages resulting from a breach of trust not recoverable under § 1132(a)(3) following Mertens), cert. denied, 525 U.S. 1178, 119 S.Ct. 1115, 143 L.Ed.2d 110 (1999).
Equitable relief, such as in the form of an injunction requiring the Moore Plan to reinstate James Geissal as a beneficiary, would have been entirely appropriate while Mr. Geissal was alive and within the 18 month time frame of COBRA. See, e.g., Howe v. Varity Corp. 36 F.3d 746, 756-57 (8th Cir.1994) (plaintiffs wrongfully induced to leave one company for another and lost benefits when the other company failed were entitled to an injunction restoring them to the previous plan and payments of money they would have received had they never left the previous plan), aff'd, 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). Indeed, plaintiff acknowledged that this was a major concern at the time of the filing of this lawsuit and one of the main reasons Mr. Geissal moved early for partial summary judgment. Pl. Combined Memo., filed August 4, 2000 (Doc. No. 139) at 1, n. 1.
The court recognizes that this essentially leaves plaintiff without relief against the Moore Plan. Several courts have noted this problem and the gap in ERISA remedies as a result of the preemption of state remedies. See Bast, 150 F.3d at 1010 ("Although forcing the Basts to assert their claims only under ERISA may leave them without a viable remedy, this is an unfortunate consequence of the compromise Congress made in drafting ERISA"); Turner, 127 F.3d at 200-01 ("Appellant, recognizing that the statutory and case law compels the district court's grant of summary judgment to appellee, addresses entreaties to us which, if appropriate at all, are appropriate to the legislative branch. Periodic accusations to the contrary notwithstanding, *984 the courts are not legislative bodies.") (Hill, J., concurring); Andrews-Clarke v. Travelers Ins. Co., 984 F.Supp. 49, 65 (D.Mass.1997) ("Although the alleged conduct of Travelers and Greenspring in this case is extraordinarily troubling, even more disturbing to this Court is the failure of Congress to amend a statute that, due to the changing realities of the modern health care system, has gone conspicuously awry from its original intent"); cf. Prudential Ins. Co. of Am. v. National Park Med. Center, Inc., 154 F.3d 812, 830 (8th Cir.1998) (On the issue of preemption, "it is for Congress, not the courts, to reassess ERISA in light of modern insurance practices and the national debate over health care").
Therefore, plaintiff's cross-motion for summary judgment for appropriate equitable relief (Doc. No. 139) will be denied. Defendants' motion for partial summary judgment on Count I of plaintiff's complaint, specifically on the issue of damages (Doc. No. 139) will be granted. Both parties agree that Counts II and III are moot. See Def. Memo. in Support, filed August 4, 2000 (Doc. No. 139), at 5 n. 4; Pl. Motion to Reconsider, filed August 31, 1998 (Doc. No. 57), at 7.
Therefore, the only issues remaining before this court are those alleged in Count IV, chiefly plaintiff's entitlement to penalties as a result of defendant Walter's failure to provide plaintiff with requested documents in violation of 29 U.S.C. § 1024(b)(4), and attorney's fees. Plaintiff adverted to these issues in her memorandum, in footnotes 2 and 3, filed August 4, 2000. The court will consider those issues according to a schedule ordered by the court.
An appropriate order is issued herewith.

ORDER
In accordance with the Memorandum filed herewith,
IT IS HEREBY ORDERED that defendants' motion for partial summary judgment on Count I on the issue of damages (Doc. No. 139) is granted.
IT IS FURTHER ORDERED that plaintiff's cross-motion for summary judgment for appropriate equitable relief (Doc. No. 139) is denied.
IT IS FURTHER ORDERED that plaintiff may file a motion for the award of a penalty and fees within thirty days of this date.
NOTES
[1] This defendant's surname has been spelled "Walker" in the pleadings. However, the correct spelling is "Walter." See Affidavit of Herbert Walter, filed May 7, 1999. The style of the case is therefore corrected.
[2] While summary judgment was pending, James Geissal died, and Bonnie Geissal, his wife and the personal representative of his estate, replaced him as plaintiff.
[3] Near the end of Mr. Geissal's life, the Geissal's traveled to Greece to obtain immunotherapy in a last effort to save his life.