# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1243

_____

| | | |
|---|---|---|
| Geraldine Chesnut; Donald Chesnut, | * | |
| | * | |
| Plaintiffs - Appellants, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Arkansas. |
| David Montgomery, doing business as | * | |
| Montgomery's I.G.A., | * | |
| | * | |
| Defendant - Appellee. | * | |

_____

Submitted: June 28, 2002

Filed: October 8, 2002

_____

Before McMILLIAN, JOHN R. GIBSON, and LOKEN, Circuit Judges.

_____

LOKEN, Circuit Judge.

The continuation of health insurance coverage is an important concern when a person changes jobs. In the Consolidated Omnibus Budget Reconciliation Act of 1986 ("COBRA"), Congress amended the Employee Retirement Income Security Act ("ERISA") to require that covered group health plans "provide . . . that each qualified beneficiary who would lose coverage . . . as a result of a qualifying event is entitled . . . to elect . . . continuation coverage under the plan." 29 U.S.C. § 1161(a). Termination of employment is a "qualifying event" for purposes of this COBRA requirement. See 29 U.S.C. § 1163(2).

In this case, Geraldine Chesnut left her job as deli manager of Montgomery's I.G.A. grocery store. Geraldine declined continuation coverage available under the store's group health insurance plan and instead applied for an individual major medical policy. She was rejected because of her medical history, and thereafter incurred substantial health care expenses. Geraldine and her husband Donald commenced this action against the store's owner, David Montgomery, to recover these expenses, alleging that Montgomery failed to give them the notice of their right to elect continuation coverage required by 29 U.S.C. § 1166(a)(4). After a bench trial, the district court[1] found that Geraldine received sufficient oral notice, and that Donald received no notice but should not be awarded a statutory penalty. The Chesnuts appeal, challenging both rulings. We affirm.

## I. Background.

Montgomery purchased a group health insurance policy issued by American National Life Insurance Company of Texas ("American National") to cover his store managers. The policy was an ERISA welfare benefit plan to which the COBRA amendments applied, see 29 U.S.C. § 1161(b), and the Chesnuts were qualified beneficiaries under the plan. Geraldine's decision to leave the store for a better job was a qualifying event triggering the plan administrator's duty to notify "any qualified beneficiary . . . of such beneficiary's rights under this subsection." § 1166(a)(4). Those rights include the right to elect continuation coverage for up to eighteen months following the qualifying event, at the qualified beneficiary's expense. See 29 U.S.C. § 1162(2) & (3). Montgomery as plan sponsor was obligated to provide the required notice because the American National policy did not name a plan administrator. See 29 U.S.C. §§ 1002(16)(A)(ii) & (B).

---

[1]The HONORABLE H. FRANKLIN WATERS, United States District Judge for the Western District of Arkansas, who to our great regret has passed away since completing his work on this case.

At trial, Geraldine testified that the day after she gave notice, she asked Montgomery if she could keep her health insurance; he replied, "they won't let you." Geraldine denied that either Montgomery or his American National insurance agent, Scott Kyser, ever advised her that she could keep her health insurance on a temporary basis for up to eighteen months. Montgomery, however, testified that, after consulting with Kyser, he advised Geraldine that she could continue her health insurance for eighteen months at her expense but could not continue that coverage permanently. Kyser testified that he met with Geraldine at the store and later at the Chesnut farm to discuss her insurance options. Kyser informed her that she could elect to continue her present coverage for eighteen months, or she could purchase an individual health insurance policy offering similar coverages. He advised Geraldine that the individual policy was considerably less expensive, but "I did explain [that] with pre-existing [medical] conditions they can decline [to insure] you."

Both Montgomery and Kyser testified that Geraldine repeatedly told them she wanted permanent rather than temporary health insurance. Three store employees testified that they overhead Geraldine complain about the temporary nature of the continuation coverage. After meeting with Kyser at the Chesnut farm, Geraldine submitted an application to Kyser for an individual American National major medical policy covering herself and Donald. Two months later, American National accepted Donald's application but denied coverage to Geraldine based on her health history. American National sent Donald's policy directly to the Chesnuts along with a letter explaining that Geraldine's application was denied and a check refunding one-half of their initial premium payment. The Chesnuts cashed the check but failed to note that Geraldine was now uninsured. She had a heart attack four months later, and the couple incurred $25,196.70 in uninsured medical expenses.

Donald Chesnut testified that he received no separate notice of his continuation coverage rights as a qualified beneficiary. Donald incurred no medical expenses during the eighteen-month COBRA continuation period.

In a thorough post-trial Memorandum Opinion, the district court first ruled that the notice required by § 1166(a)(4) need not be in writing. The court then credited the testimony of Montgomery and Kyser concerning their conversations with Geraldine about her health insurance options and found that these discussions constituted a good faith and legally sufficient oral notice of her right to elect COBRA continuation coverage. Finally, the court determined that Donald received no separate notice of his right to elect continuation coverage, but the court exercised its discretion not to impose the authorized statutory penalty of up to $100 per day.[2]

## II. Issues Relating to Geraldine Chesnut.

The Chesnuts first argue that Geraldine was entitled to written notice of her COBRA right to elect temporary continuation health insurance coverage. The statute is silent as to the manner in which the required notice must be given. The district court concluded that sufficient oral notice satisfies the statutory requirement, noting that § 1166(a)(1) expressly provides for written notice when coverage under a group plan commences, but § 1166(a)(4) only provides that the administrator "shall notify" in the case of a qualifying event. We agree. When a qualifying event occurs, the covered employee has already received an initial written notice of the right to continuation coverage. The second notice is merely a reminder of that right. Congress could easily have required the second notice to be in writing as well, but it did not. "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Russello v. United States, 464 U.S. 16, 23 (1983) (quotation omitted). The presumption is much

---

[2]"Any [plan] administrator (A) who fails to meet the requirements of paragraph (1) or (4) of Section 1166 of this title . . . may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper." 29 U.S.C. § 1132(c)(1).

stronger when, as here, the comparison is between two subsections of the same section of a statute.

The Chesnuts have not cited, and we have not found, a decision holding that the notice required by § 1166(a)(4) must be in writing. "In general, courts that have addressed the issue have held that a good faith attempt to comply with a reasonable interpretation of the statute is sufficient." Smith v. Rogers Galvanizing Co., 128 F.3d 1380, 1383 (10th Cir. 1997) (quotation omitted); accord McDowell v. Krawchison, 125 F.3d 954, 958 (6th Cir. 1997). We agree with the district court that sufficient oral notice satisfies the notice requirement.

The Chesnuts next argue that Geraldine did not receive legally sufficient oral notice. The statute does not specify the content of the notice that a qualified beneficiary must receive after a qualifying event has occurred. Neither the Department of Labor nor the Internal Revenue Service -- the two agencies charged with interpreting and enforcing ERISA -- has issued regulations addressing the issue. In Lincoln Gen. Hosp. v. Blue Cross/Blue Shield, 963 F.2d 1136, 1140 (8th Cir. 1992), we held that a plan administrator satisfied its notice obligation by providing information that "adequately informed [the qualified beneficiary] of the coverage she was entitled to receive and the money that she owed in order to maintain this coverage." Similarly, in McDowell v. Krawchison, the Sixth Circuit stated that "the notice given must be sufficient to allow the qualified beneficiary to make an informed decision whether to elect coverage." 125 F.3d at 958. We agree that these general standards are appropriate. The definition of qualified beneficiary varies depending upon the qualifying event. See § 1167(3). It may include both employees and their spouses and dependent children, who may have differing needs for information. See Meadows by Meadows v. Cagle's, Inc., 954 F.2d 686, 692 (11th Cir. 1992). Therefore, the standard for determining whether a § 1166(a)(4) notice was sufficient should not be defined with any greater particularity.

As the district court recognized, Montgomery bore the burden of proving that he gave Geraldine sufficient oral notice. Stanton v. Larry Fowler Trucking, Inc., 52 F.3d 723, 727-29 (8th Cir. 1995). The court credited agent Kyser's testimony as to the advice he gave Geraldine -- that she could elect up to eighteen months of continuation coverage, that such coverage was considerably more expensive than an individual policy providing comparable coverage, but that she might be denied an individual policy based upon her medical history. Without challenging this credibility finding, the Chesnuts suggest it is "troubling" to rely upon notice provided by an insurance agent. We disagree. When an employer is responsible for providing the § 1166(a)(4) notice, it is to the beneficiary's advantage if the employer delegates the task to an insurance agent or other professional who understands the terms of the ERISA plan and the specifics of COBRA continuation coverage.

The Chesnuts next argue that the oral notice did not include the termination date of Geraldine's group coverage, why the coverage was being terminated, how to elect continuation coverage, and when to make the first premium payment. The first two items are details both implicit in Geraldine leaving her job and irrelevant to whether she was given enough information to make an informed decision. The second two items are potentially important, but they were not relevant here because Geraldine repeatedly told both Montgomery and Kyser that she was not interested in temporary continuation coverage. After Geraldine had emphatically rejected continuation coverage, Kyser had no reason to tell her the details of how to obtain it.

Finally, the Chesnuts argue that the oral notice was insufficient because it did not advise Geraldine of her option to obtain conversion coverage at the end of the eighteen-month continuation coverage period. However, the relevant statute expressly provides that the COBRA conversion coverage option need not be provided until the last 180 days of a qualified beneficiary's continuation coverage period:

In the case of a qualified beneficiary whose period of continuation coverage expires . . . the plan must, <u>during the 180-day period ending on such expiration date</u>, provide to the qualified beneficiary the option of enrollment under a conversion health plan otherwise generally available under the plan.

29 U.S.C. § 1162(5) (emphasis added). This delay in providing the conversion option is logical because welfare benefit plans may be amended and the conversion option need not be made available to qualified COBRA beneficiaries unless "such an option is otherwise generally available to similarly situated nonCOBRA beneficiaries under the group health plan." 26 C.F.R. § 54.4980B-7, at A-8. Construing the wording of § 1162(5), at least one court has held that the statute does not require notice to the qualified beneficiary, only that the option be made available in the plan. <u>See</u> <u>Anderson v. Ill. Bell Tel. Co.</u>, 961 F. Supp. 1208, 1215-16 (N.D. Ill. 1997). We need not decide this question because, even if the statutory duty to provide a conversion option includes a notice requirement, § 1162(5) clearly defers that requirement until the last 180 days of a qualified beneficiary's continuation coverage period.

Whether the § 1166(a)(4) notice was sufficient in a particular case is an issue of fact we review for clear error. After careful review of the trial record, we conclude that the district court's finding of sufficient notice to Geraldine Chesnut was not clearly erroneous.

### III. Issues Relating to Donald Chestnut.

As a qualified beneficiary, Donald was entitled to separate notice of his right to elect continuation coverage. <u>See</u> 29 U.S.C. § 1167(3)(A)(i); <u>McDowell v. Krawchison</u>, 125 F.3d at 959. Donald received no separate notice, but he incurred no medical expenses during the continuation coverage period, and his brief trial testimony did not identify any harm resulting from this violation. Although recognizing that neither Montgomery's good faith nor the absence of actual injury to

-7-

Donald precludes the award of a statutory penalty under 29 U.S.C. § 1132(c)(1), the district court nonetheless decided to exercise its discretion not to assess a penalty for this "technical violation." We review this decision for abuse of discretion. Wilson v. Moog Auto., Inc. Pension Plan, 193 F.3d 1004, 1010 (8th Cir. 1999).

On appeal, Donald Chesnut argues that the district court erred in concluding he was not harmed because he is jointly liable for Geraldine's uninsured medical expenses. However, there was no testimony at trial suggesting that Geraldine's decision to decline continuation coverage would have been different had Donald received separate notice of *his* right as a qualified beneficiary to elect continuation coverage. Thus, the lack of separate notice to Donald was not the proximate cause of the harm that resulted from Geraldine's uninsured medical expenses.

The purpose of ERISA's statutory penalty is to punish noncompliance. See Scott v. Suncoast Beverage Sales, Ltd., 295 F.3d 1223, 1232 (11th Cir. 2002); Faircloth v. Lundy Packing Co., 91 F.3d 648, 659 (4th Cir. 1996), cert. denied, 519 U.S. 1077 (1997). The employer's good faith and the absence of harm are relevant in deciding whether to award a statutory penalty. See Wilson, 193 F.3d at 1010; Mlsna v. Unitel Communications, Inc., 41 F.3d 1124, 1130 (7th Cir. 1994). After careful review of the record, we conclude that the district court did not abuse its discretion in declining to award a statutory penalty for Montgomery's technical violation of failing to give Donald Chesnut a separate § 1166(a)(4) notice.

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-8-