# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2255
No. 02-2256

_____

| | | |
|---|---|---|
| Bonnie L. Geissal, as personal representative of the Estate of James W. Geissal, | * * * * | |
| Plaintiff - Appellant/ Cross Appellee, | * * | Appeals from the United States |
| v. | * * | District Court for the Eastern District of Missouri. |
| Moore Medical Corporation, et al., | * * * | |
| Defendants - Appellees/ Cross Appellants. | * * | |

_____

Submitted: February 10, 2003

Filed: July 31, 2003

_____

Before HANSEN,[*] Chief Judge, LOKEN and SMITH, Circuit Judges.

_____

LOKEN, Chief Judge.

After Moore Medical Corporation ("Moore") terminated employee James Geissal in 1993, he elected to purchase continuation health insurance coverage

_____

[*]The Honorable David R. Hansen stepped down as Chief Judge at the close of business on March 31, 2003, succeeded by the Honorable James B. Loken.

through Moore's Group Benefit Plan (the "Moore Plan"). Some months later, the Moore Plan canceled this coverage when it determined that Geissal was not entitled to continuation coverage under the Consolidated Omnibus Budget Reconciliation Act of 1986 ("COBRA"), 29 U.S.C. §§ 1161-1169, which amended the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq*. Geissal sued Moore, the Moore Plan, and its administrator, alleging that he was entitled to at least eighteen months of COBRA coverage. The Supreme Court ultimately agreed and remanded the case for further proceedings.

On remand, addressing questions of remedy, the district court denied Geissal compensatory damages and statutory penalties but granted him an award of $217,369.70 in attorney's fees. Geissal's widow appeals on behalf of his estate, seeking money damages, penalties, and additional attorney's fees under 29 U.S.C. § 1132(a), (c), and (g). Moore cross-appeals, arguing that the district court erred in awarding attorney's fees because Geissal is not a prevailing party. We affirm the district court in all major respects but remand for further consideration of whether the estate should recover unreimbursed medical expenses paid by Geissal or the estate.

## I. Background

Throughout Geissal's employment at Moore, Trans World Airlines ("TWA") employed his wife, Bonnie ("Mrs. Geissal"). Geissal as her spouse was covered under TWA's health insurance plan (the "TWA Plan"), which was administered by Aetna Life Insurance Company ("Aetna"). Before Moore terminated Geissal in July 1993, the Moore Plan paid for his ongoing cancer treatments. The Moore Plan is a self-funded employee welfare benefit plan governed by ERISA and COBRA. After Geissal's termination, he elected COBRA continuation coverage under the Moore Plan and made six monthly premium payments of $148.51 per month. In January

1994, the Moore Plan cancelled the COBRA coverage and refunded Geissal's premium payments because he was also covered by the TWA Plan during this period.

After the cancellation, Aetna as administrator of the TWA Plan paid nearly all claims for medical expenses incurred by Geissal between the date of his termination and January 17, 1995, when the eighteen-month COBRA continuation coverage period ended. During that period, the TWA Plan paid $86,795.25 to Geissal's health care providers and $6,528.65 to Geissal for his covered out-of-pocket expenses. During this same period, Geissal did not seek reimbursement for expenses incurred on a trip to Greece for cancer treatment, and he incurred $4,425.55 in medical expenses that the TWA Plan declined to reimburse.

Geissal commenced this lawsuit in June 1994, seeking compensatory damages for past due COBRA benefits, injunctive and equitable relief, penalties under 29 U.S.C. § 1132(c), and costs and expenses including reasonable attorney's fees. After Geissal died on June 23, 1995, Mrs. Geissal as representative of his estate was substituted as plaintiff. The district court granted summary judgment in favor of the defendants. Geissal v. Moore Medical Corp., 927 F. Supp. 352 (E.D. Mo. 1996). We affirmed, construing the term "first becomes . . . covered under any other group health plan" in 29 U.S.C. § 1162(2)(D)(i) as including Geissal's pre-existing coverage under the TWA Plan. Geissal v. Moore Medical Corp., 114 F.3d 1458 (8th Cir. 1997). The Supreme Court granted certiorari, rejected our interpretation of the statute, and remanded. Geissal v. Moore Medical Corp., 524 U.S. 74, 82, 87 (1998).

On remand, the principal remedy issue was whether Geissal may recover the substantial health benefits paid on his behalf by Aetna and the TWA Plan. In rejecting this claim, the district court ruled that Geissal's estate was entitled to *no* monetary relief under 29 U.S.C. § 1132(a). Geissal v. Moore Medical Corp., 158 F. Supp. 2d 976 (E.D. Mo. 2001). The court subsequently denied Mrs. Geissal's motion for an award of statutory penalties under § 1132(c)(1)(A) but granted in part her

motion for an award of attorney's fees under § 1132(g)(1). All of these rulings are challenged on appeal. We review the summary judgment rulings de novo. See Phillips-Foster v. Unum Life Ins. Co. of Am., 302 F.3d 785, 794 (8th Cir. 2002).

## II. Monetary Relief

Before turning to the applicable ERISA remedial provisions, it may be helpful to outline the principal issue as to monetary relief -- whether Mrs. Geissal may recover the health benefits paid to Geissal's medical providers by Aetna on behalf of the TWA Plan. The Moore Plan provides that "[b]enefits are not payable for . . . services for which there is no obligation to pay." Defendants argue that Geissal and his estate have no obligation to pay the substantial medical expenses paid by Aetna under the TWA Plan. Mrs. Geissal concedes she has no obligation to reimburse the TWA Plan for paying those expenses but argues she is entitled to recover those benefit payments because the Moore Plan would have paid them but for its wrongful cancellation of Geissal's COBRA continuation coverage. Defendants respond that, assuming the TWA Plan's coverage was secondary to the Moore Plan's primary COBRA coverage, the Moore Plan's coordination of benefits provisions provide a remedy to the secondary insurer, the TWA Plan. But those provisions provide no remedy to the plan participant or beneficiary, who would receive a windfall double recovery if allowed to recover expenses already paid by a third party. Mrs. Geissal replies that the third parties in this case -- which include medical providers who discounted their bills to Aetna, as well as Aetna and the TWA Plan -- have failed to assert timely claims against Moore and the Moore Plan for reimbursement, so she should be entitled to recover on their behalf to prevent the self-funded Moore Plan from being unjustly enriched by its wrongful denial of COBRA coverage.

Because ERISA preempts state law remedies, the parties agree that Mrs. Geissal's right to this remedy must be found in ERISA's remedial provisions and more particularly in 29 U.S.C. § 1132(a), which provides in relevant part:

(a) . . . A civil action may be brought -

(1) by a participant or beneficiary -

* * * * *

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . .

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

The district court concluded that Mrs. Geissal is not entitled to monetary relief under either § 1132(a)(1)(B) or § 1132(a)(3)(B). On appeal, she challenges both rulings.

**A. Relief Under § 1132(a)(1)(B).** The district court concluded that Mrs. Geissal and the estate may not recover plan benefits under § 1132(a)(1)(B) because Geissal, the plan beneficiary, is deceased. 158 F. Supp. 2d at 982. The statute provides that "[a] civil action may be brought . . . by a participant or beneficiary." But we have declined to construe this language as precluding ERISA claims after the participant or beneficiary has died. In Shea v. Esenstein, 107 F.3d 625, 628 (8th Cir.), cert. denied, 522 U.S. 914 (1997), we held that the representative of a deceased participant's estate had standing to sue for breach of ERISA fiduciary duties. In McGee v. Funderburg, 17 F.3d 1122 (1994), we upheld a widow's claim for COBRA continuation benefits without discussing the issue. Addressing the precise question here at issue, the Third Circuit held that an action for benefits under § 1132(a)(1)(B) survives the death of the beneficiary because Congress intended ERISA to be remedial, and "[a]ctions that are remedial in nature generally survive the death of a

-5-

party." Harrow v. Prudential Ins. Co. of Am., 279 F.3d 244, 248 (3d Cir. 2002). We agree. Therefore, the district court erred in ruling that Geissal's estate may not recover Moore Plan benefits under § 1132(a)(1)(B).[1]

(1) That brings us to the main issue, whether Mrs. Geissal may recover benefits paid by the TWA Plan. Section 1132(a)(1)(B) provides that a participant or beneficiary may recover "benefits due to him under the terms of his plan." COBRA provides that continuation coverage must be "identical to the coverage provided under the plan to similarly situated beneficiaries." 29 U.S.C. § 1162(1). The Moore Plan provides that "[b]enefits are not payable for . . . services for which there is no obligation to pay." In our view, the plain language of § 1132(a)(1)(B) and the Moore Plan preclude Mrs. Geissal from recovering medical expenses paid by another health insurer. See Larocca v. Borden, Inc., 276 F.3d 22, 30-31 (1st Cir. 2002).

On appeal, Mrs. Geissal argues that § 1132(a)(1)(B) allows her to recover the TWA Plan benefit payments and the medical provider discounts under a legal restitution theory. As support for this novel theory, Geissal relies upon the Supreme Court's recent decision in Great-West Life & Annuity Insurance Co. v. Knudson, 534 U.S. 204 (2002), which held that legal restitution may not be recovered under § 1132(a)(3) because it is not "equitable relief." However, Knudson did not address whether a participant or beneficiary may recover legal restitution under

---

[1]The district court relied for its contrary conclusion on Turner v. Fallon Community Health Plan, Inc., 127 F.3d 196, 198 (1st Cir. 1997), cert. denied, 523 U.S. 1072 (1998), and on Bast v. Prudential Insurance Co. of America, 150 F.3d 1003, 1009 (9th Cir. 1998), cert. denied, 528 U.S. 870 (1999). But those cases involved claims for money damages for the beneficiary's death after the plan denied coverage for a medical procedure the beneficiary could not afford. The courts decided that § 1132(a)(1)(B) does not permit a damage action for breach of the plan, only for benefits due under the plan. They did not decide the issue in this case, whether a beneficiary's estate may recover money benefits due under the plan before the beneficiary died.

§ 1132(a)(1)(B). We doubt that such a remedy is available, because the statute is expressly limited to claims for benefits due "under the terms of the plan." But even if a claim for legal restitution is available under § 1132(a)(1)(B), the Supreme Court limited the theory to a claim in which the plaintiff can "show just grounds for recovering money to pay for *some benefit the defendant had received from him.*" Knudson, 534 U.S. at 213 (emphasis added) (quotation omitted). Here, any unjust enrichment of the Moore Plan resulted from benefits indirectly conferred by third parties, not by Geissal or his estate. Thus, Mrs. Geissal has no claim for legal restitution.

(2) Concluding that Mrs. Geissal may not recover TWA Plan payments and provider discounts does not end our inquiry under § 1132(a)(1)(B). Mrs. Geissal also argues that the Moore Plan is liable for $4,425.55 in health expenses paid by Geissal that were not covered by the TWA Plan,[2] and for some $9,000 in expenses for cancer treatments in Greece. Defendants argue that Mrs. Geissal is entitled to no recovery whatsoever because $1,811.47 of the $4,425.55 was for uncovered expenses, the remainder is less than COBRA premiums and deductibles that Geissal would have been required to pay, and the Greek cancer treatments were not covered expenses because they were "experimental in nature or application." The district court did not

---

[2]This amount does not include unreimbursed medical expenses Geissal incurred between the end of the eighteen-month COBRA period and June 23, 1995, the date of his death. Mrs. Geissal argues the Moore Plan is liable for these expenses because he was entitled to an additional eleven months of COBRA coverage when the Social Security Administration determined in March 1994 that Geissal was disabled as of September 3, 1993. We disagree. The COBRA provisions in effect at the time Geissal was terminated granted eleven additional months of continuation coverage to a qualified beneficiary "who is determined, under title II or XVI of the Social Security Act . . . to have been disabled *at the time of a qualifying event,*" here, termination. 29 U.S.C. § 1162 (2)(A)(iii) (Supp I. 1989) (emphasis added). As Geissal was not disabled when he was terminated on July 17, 1993, he did not qualify for the additional eleven months of COBRA coverage.

resolve these issues because it ruled that an estate may not recover under § 1132(a)(1)(B). As the issues are contested, we remand for further consideration of whether Mrs. Geissal may recover all or any part of these amounts as "benefits due . . . under the terms of his plan." We note that this case is very old, and we encourage the parties to settle this small remaining part of the original dispute. To encourage common sense in this regard, we instruct the district court that any attorney's fee awarded for the proceedings on remand may not exceed one-third of the remaining amounts in controversy.

**B. Relief Under Section 1132(a)(3).** Alternatively, Mrs. Geissal argues that she may recover TWA Plan payments and provider discounts under 29 U.S.C. § 1132(a)(3)(B), which provides that a participant or beneficiary may obtain "appropriate equitable relief" to redress ERISA violations. Mrs. Geissal argues that this provision entitles her either to equitable restitution or to an order directing the Moore Plan to pay Geissal's medical expenses into a constructive trust for the benefit of the TWA Plan and Geissal's health care providers.[3]

As the district court recognized, 158 F. Supp. 2d at 981, we have twice held "that where a plaintiff is 'provided adequate relief by the right to bring a claim for benefits under . . . § 1132(a)(1)(B),' the plaintiff does not have a cause of action to seek the same remedy under § 1132(a)(3)(B)." Conley v. Pitney Bowes, 176 F.3d 1044, 1047 (8th Cir. 1999), cert. denied, 528 U.S. 1136 (2000), quoting Wald v. Southwestern Bell Corp. Customcare Med. Plan, 83 F.3d 1002, 1006 (8th Cir. 1996);

---

[3]Geissal first suggested the constructive trust remedy in the middle of her lengthy, scatter-gun reply brief. The theory is unsound, in part because it is not "appropriate" equitable relief to make the plan beneficiary's estate a constructive trustee for third parties who could have, but did not, assert their own rights against the beneficiary and/or the Moore Plan. See Larocca, 276 F.3d at 31; Lutheran Med. Ctr. v. Contractors Health & Welfare Plan, 25 F.3d 616, 619 (8th Cir. 1994); Winstead v. J.C. Penney Co., 933 F.2d 576, 579-80 (7th Cir. 1991).

accord Larocca, 276 F.3d at 28-29, and cases cited).  As the Supreme Court observed in Varity Corp. v. Howe, 516 U.S. 489, 515 (1996), "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'"  Thus, Mrs. Geissal may not seek to recover these amounts both as benefits due under § 1132(a)(1)(B) and as equitable restitution under § 1132(a)(3).

Mrs. Geissal argues her right to this kind of equitable relief was established by our decision in McGee, 17 F.3d at 1126.  We disagree.  Our opinion in McGee did not identify the ERISA remedial provision under which we granted COBRA coverage relief.  McGee is best viewed as granting relief under § 1132(a)(1)(B).  Indeed, if our decision in McGee was based upon the grant of equitable relief under § 1132(a)(3), it was superseded by the Supreme Court's subsequent decision in Varity Corp. as construed by this court in Conley and Wald.

### III.  Statutory Penalties

COBRA requires that a plan administrator notify any qualified beneficiary "of such beneficiary's rights under [COBRA]" upon the occurrence of a qualifying event. 29 U.S.C. § 1166(a)(4).  ERISA remedies include a provision that an administrator who breaches this duty "may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day."  29 U.S.C. § 1132(c).

At termination, Moore sent Geissal a written COBRA notice and election form substantially similar to the Department of Labor model COBRA notice.  Mrs. Geissal argues that the Moore Plan administrator is nonetheless liable for § 1132(c) penalties because (i) the notice failed to advise that Geissal would be entitled to an additional eleven months of COBRA coverage if the Social Security Administration determined he was disabled at the time of the qualifying event; and (ii) Moore later revoked COBRA coverage based upon an interpretation of the statute later rejected by the

Supreme Court. The district court declined to assess penalties, concluding that Moore's notice was based upon a reasonable interpretation of the law. We review that ruling for abuse of discretion. <u>Chesnut v. Montgomery</u>, 307 F.3d 698, 703 (8th Cir. 2002).

Section 1132(c) authorizes penalties for noncompliance with the notice requirements of § 1166(a)(4). <u>See</u> <u>Chesnut</u>, 307 F.3d at 704. Therefore, the issue under § 1132(c) is whether the plan administrator gave a proper notice, not whether Geissal was improperly denied COBRA continuation coverage. The notice must adequately inform the beneficiary of the COBRA coverage he is entitled to receive (or, in this case, arguably entitled to receive) and the money owed to maintain this coverage. <u>Lincoln Gen. Hosp. v. Blue Cross/Blue Shield</u>, 963 F.2d 1136, 1140 (8th Cir. 1992). Here, the only alleged deficiency in the initial notice was its failure to advise that coverage was available for a longer period if Geissal was disabled on the date of his termination. As we have noted, Geissal was not eligible for this additional continuation coverage. <u>See</u> <u>supra</u> note 2. Mrs. Geissal argues that, with proper notice, Geissal could have persuaded the Social Security Administration to adopt an earlier onset date, thereby making him eligible. We reject this contention as entirely speculative. Moreover, to trigger the additional coverage, the qualified beneficiary must notify the plan administrator of the disability determination. <u>See</u> 29 U.S.C. § 1166(a)(3) (Supp. I. 1989). Geissal gave no such notice before the Moore Plan administrator sent him the July 1993 COBRA notice. Finally, because Geissal elected continuation coverage, no harm resulted from this alleged notice deficiency. <u>See</u> <u>Chesnut</u>, 307 F.3d at 702. In these circumstances, the district court did not abuse its discretion in refusing to impose § 1132(c) penalties for the Moore Plan administrator's good faith attempt to comply with the COBRA notice requirements.

## IV.  Attorney's Fee Issues

ERISA's remedial provisions include the discretion to award attorney's fees to either party:  "In any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."  29 U.S.C. § 1132(g)(1).  At the end of this protracted litigation, the district court concluded that Mrs. Geissal was a prevailing party and awarded her $217,369.70 in attorney's fees and expenses.  In arriving at that amount, the court determined a reasonable fee using the lodestar method and then reduced the fee by fifty percent because of her limited success.  On appeal, Mrs. Geissal argues she is entitled to a substantially increased award.  In their cross appeal, defendants argue the fee award should be overturned because Mrs. Geissal is not a prevailing party.  Reviewing the district court's fee award for abuse of discretion, we reject both contentions.  See Griffin v. Jim Jamison, Inc., 188 F.3d 996, 997 (8th Cir. 1999) (standard of review).

**A.  Was a Fee Award Proper?**  In responding to the cross appeal, Mrs. Geissal initially argues that she need not be a prevailing party to receive a fee award under § 1132(g)(1).  Though she cites no support for this contention, it is an interesting issue that has received considerable attention in other circuits.  See Gibbs v. Gibbs, 210 F.3d 491, 501-03 (5th Cir. 2000) (citing cases discussing attorney's fees in ERISA cases).  This court has frequently assumed that only prevailing parties may be awarded fees in ERISA cases.  See, e.g., Martin v. Ark. Blue Cross & Blue Shield, 299 F.3d 966, 970-71 (8th Cir. 2002) (en banc), cert. denied, 123 S. Ct. 967 (2003) (overruling the presumption that ERISA prevailing parties are entitled to a fee award); Jackson v. Metro. Life Ins. Co., 303 F.3d 884, 890 (8th Cir. 2002) (vacating a fee award after reversing on the merits).  The fact that the statute does not expressly limit fee awards to prevailing parties is significant, but not conclusive.  In Ruckelshaus v. Sierra Club, 463 U.S. 680, 693 (1983), for example, a divided Supreme Court concluded that "the language and legislative history of § 307(f) [of

the Clean Air Act] do not support respondents' argument that the section was intended as a radical departure from established principles requiring that a fee claimant attain some success on the merits before it may receive an award of fees." But we do not read the decision in Ruckelshaus as *necessarily* meaning that the Court would construe what it has often referred to as "ERISA's carefully crafted and detailed enforcement scheme" the same way. Knudson, 534 U.S. at 209 (quotation omitted). In this case, we agree with the district court that Mrs. Geissal was a prevailing party for fee award purposes. Therefore, we leave unresolved the question whether, in ERISA cases, a district court may only award attorney's fees to a prevailing party.

Defendants argue that Mrs. Geissal was not a prevailing party because she was granted no relief. We agree with the district court that she became a prevailing party when "she obtained a favorable ruling from the United States Supreme Court that Moore's basis for denying Geissal benefits was invalid." The Supreme Court has expressly recognized that a fee award may be appropriate when a party "ha[s] established the liability of the opposing party, although final remedial orders ha[ve] not been entered." Hanrahan v. Hampton, 446 U.S. 754, 757 (1980). To be sure, such an interlocutory order must create a "material alteration of the legal relationship of the parties" to confer prevailing party status. Texas State Teachers Ass'n v. Garland Indep. School Dist., 489 U.S. 782, 792-93 (1989). That test is satisfied by the Supreme Court's ruling that Geissal was entitled to COBRA continuation coverage. This ruling would have entitled Geissal to injunctive relief had the coverage period then been unexpired, and it entitled his estate to seek monetary relief under § 1132(a)(1)(B), which for the most part it was unable to prove.

**B. Was the Fee Award an Abuse of Discretion?** In determining the amount of attorney's fees to award, the district court first applied the five-factor test set forth in Lawrence v. Westerhaus, 749 F.2d 494, 495-96 (8th Cir. 1984), and then applied the lodestar method to calculate a reasonable fee. Mrs. Geissal argues the court

abused its discretion when it set lead counsel's lodestar rate at $250 per hour, rather than the $350-$500 per hour requested; when it failed to enhance the lodestar rate; and when it reduced the award by fifty percent because of her limited success in the litigation. After careful review of the record, we reject these contentions. The Supreme Court's favorable ruling came nearly three years after Geissal died. Mrs. Geissal's attorneys then spent approximately 750 hours pursuing novel damage theories that were determined to be almost totally without merit. "A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." Hensley v. Eckerheart, 461 U.S. 424, 440 (1983). Here, Mrs. Geissal prevailed on the question of liability and then wasted valuable resources of all the parties, including an ERISA plan, in litigating monetary remedy questions that should have been settled. The district court did not abuse its discretion in reducing by fifty percent the award determined by the lodestar method.

The judgment of the district court is reversed and the case is remanded for further consideration of the issues discussed in Part II.A.(2) of this opinion. In all other respects, the judgment of the district court is affirmed. Appellant's Motion To Strike Supplemental Appendix is denied.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-13-